### GRABLE et al. v. KILLITS, District Judge.*

### SAME v. BACON BROS. CO.

(Circuit Court of Appeals, Sixth Circuit. June 9, 1922.)

Nos. 3713, 3725.

1. **Courts ⬡269—Jurisdiction to enforce lien does not give jurisdiction generally over defendants outside of the district, served only by publication.**

The jurisdiction of the District Court, under Judicial Code, § 57 (Comp. St. § 1039), to determine the right to a lien asserted against property situated within the district, belonging to defendants who reside outside of the district, and who were served outside of the district, is limited to an enforcement of the liens claimed, and does not include a personal decree against the defendants for the amount of the claim in excess of the value of the property, nor incidental relief by way of injunctions or receiverships affecting property of the defendants outside of the district, which relief cannot be had against nonresident defendants without personal service of process within the district or such general appearance as is equivalent thereto.

2. **Appearance ⬡9(5), 19(1)—Defendant, seeking affirmatively exercise of court's jurisdiction, appears generally.**

A defendant, who invokes the exercise of a court's jurisdiction by affirmative acts in recognition thereof, as by motion to dismiss on the ground that the bill did not state cause of action, or by seeking relief on the merits before, or in connection with, the motion to set aside the service, will be deemed to have appeared generally, and so to have waived lack of personal jurisdiction.

3. **Appearance ⬡8(4), 22—Special appearance to object to jurisdiction is not waiver of objections to jurisdiction.**

The appearance of a defendant in court, for the sole purpose of objecting by motion to the jurisdiction of the court over his person, is not an appearance in an action, or a waiver of any defect in the mode or manner by which such jurisdiction was sought to be obtained.

4. **Appearance ⬡9(3)—Seeking dissolution of receivership and restraining order held not general appearance.**

Where the District Court had issued restraining orders affecting property outside of the district, and to show cause why receivers should not be appointed to take possession of that property, as well as that within the district, in a suit against nonresident defendants, where jurisdiction depended solely on a lien on property within the district, the fact that defendants, appearing specially to move to set aside the service on them, also asked the dissolution of those orders, did not make the appearance general, waiving objections to the jurisdiction over the persons of de-

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 258 U. S. —, 43 Sup. Ct. 95, 67 L. Ed. —.

fendants, and the fact that the court had not required the restraining order to be served on defendants, and that the order to show cause for the appointment of the receiver was in reality merely a settling of the application for hearing and notice of the motion, does not affect the result.

5. **Appearance ⬡⟹9(5)—Fact motion was too broad held not to convert special appearance into general.**

The fact that defendants, who were entitled to have restraining and receivership orders set aside in so far as they affected property outside of the district, did not limit their motion for dissolution of such orders, in connection with a motion to set aside the service on them, to the relief to which they were entitled, but asked to have the orders vacated in toto, does not make their special appearance for the purpose of that motion a general appearance.

6. **Appearance ⬡⟹9(1, 5)—General appearance is question of intention.**

The question of general appearance is one of intent, actual or implied, and where the whole purpose of defendant's application is to set aside an order because it has been made without personal jurisdiction over him, the conduct which will make the motion unavailing by destroying its basis must be clear and unequivocal, and cannot be found where defendants disclaimed in the most solemn manner any intention to appear generally.

7. **Appearance ⬡⟹10—Seeking amendment of motion to set aside service is not general appearance.**

Defendants, who appeared specially to set aside the service on them, did not convert that appearance into a general appearance by seeking and obtaining leave to amend their motion, so as to insert therein the name of a defendant not originally included in the notice.

8. **Appearance ⬡⟹10—Defense on merits, after erroneous refusal to set aside service, does not waive objection.**

After defendants have done all they can to avoid personal jurisdiction by special appearance on motion to set aside service, which was erroneously denied, they can present meritorious defenses without losing the benefit of their motions, so long as they persist in their protests against personal jurisdiction.

9. **Courts ⬡⟹404—Circuit Court of Appeals can issue mandamus to compel vacating receivership orders.**

Where the District Court had erroneously refused to set aside service upon defendants, who had appealed to the Circuit Court of Appeals from the continuance of a restraining order against them, the Circuit Court of Appeals may, in aid of its appellate jurisdiction, issue mandamus to compel the District Judge to set aside a receivership order, which was in excess of his jurisdiction.

10. **Mandamus ⬡⟹4(1)—Defendants need not wait for appeal for relief against invalid receivership.**

Where the District Court, in excess of its jurisdiction, was proceeding with a hearing for the appointment of receivers for all the property of defendants, who were not within the jurisdiction of the court, defendants are entitled to mandamus against the acts of the District Court in excess of its jurisdiction, and should not be required to await the slow process of an appeal from an invalid order.

11. **Equity ⬡⟹362—On motion to dismiss, bill for rescission held not to show plaintiffs were not entitled to relief.**

A bill by a manufacturer to rescind a contract between it and defendant, an unincorporated labor organization, which contract was a substitute for a previous contract whereby the organization had purchased a factory of the manufacturer, and which provided the organization should use its good offices to promote sales by the manufacturer among its members, shows a right to relief as against a motion to dismiss the bill, by alleging that the executive committee of the organization had published a circular

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

among its members which had destroyed the good will of plaintiff with the members.

12. **Cancellation of instruments** ☞57—**Vendor and purchaser** ☞267—**Vendor's lien held extinguished by lease to vendor in satisfaction thereof; extinguished vendor's lien not revived in suit for rescission of contract extinguishing it.**

Where a manufacturer had sold his factory to an association, his vendor's lien for the unpaid portion of the purchase price was lost by a subsequent agreement whereby the association leased the property to the manufacturer for a stated period in satisfaction of his claim for the balance due on the purchase price, under which contract the manufacturer had occupied the premises for the period stated, and that lien cannot be revived on suit for rescission of that agreement for the association's breach.

13. **Judgment** ☞17(1)—**Without personal jurisdiction, court can decree rescission only as affecting property on which complainant has a lien.**

Where the United States District Court had no personal jurisdiction over the defendants, it can decree a rescission of a contract between defendants and complainant only to the extent that the right of the complainant to enforce its manufacturer's lien on property on hand when the contract was entered into still exists.

Appeal from the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

Suit in equity by the Bacon Bros. Company against E. Frank Grable, individually and as Grand President of the United Brotherhood of Maintenance of Way Employees and Railway Shop Laborers, and others. From orders of the District Court continuing restraining orders previously issued and denying defendants' motion to dissolve the orders, defendants appeal, and also petition for writ of mandamus be directed to Hon. John M. Killits, as District Judge, to require the vacation of receivership orders affecting the property of defendants. Writ of mandamus withheld on assumption District Judge will comply with decision receivership should be dissolved, and orders appealed from reversed, and record remanded to District Court, with directions.

George E. Brand and U. S. Bratton, both of Detroit, Mich., and Harold W. Fraser, of Toledo, Ohio, for petitioners and appellants.

George D. Welles, of Toledo, Ohio (Tracy, Chapman & Welles, of Toledo, Ohio, on the brief), for respondent and appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. On April 29, 1921, the Bacon Bros. Company, a corporation organized under the laws of Ohio, appellee in No. 3725, filed its bill in the court below against a large number of individuals, alleged to be, respectively, officers, trustees, members of board of appeal, members of executive board, or members generally of the United Brotherhood of Maintenance of Way Employees and Railway Shop Laborers, which is a voluntary, unincorporated association, having its principal office and place of business at Detroit, Mich. Neither of the defendants was a citizen or a resident of the district of suit, nor was either of them found therein. They were sued "in their respective capacity as representatives of said United Brother-

hood, and of all the members thereof," alleged to constitute a class so numerous as to make it impracticable to bring them all before the court. The bill, after setting forth the respective duties and relations of the Brotherhood officers, its executive board, appeal board, and trustees, may be thus sufficiently summarized:

In September, 1919, the Brotherhood duly adopted a constitution providing for its engaging in a co-operative plan for the purchase from manufacturers, and the distribution to members of the Brotherhood, of clothing, shoes, and other merchandise; its general convention making provision for the creation of a co-operative department. Accordingly, on or about January 8, 1920, for the purpose of engaging in the manufacture (among other things) of gloves and mittens (which was plaintiff's then business), the Brotherhood purchased from plaintiff certain real estate, buildings, and equipment in Toledo, Ohio, at a price of $90,214.62 (all of which was duly paid, except $10,440.83, the title being taken in the name of trustees for the Brotherhood, who still hold the same); also materials for the manufacture of gloves and mittens at a price of $105,297.75 (fully paid for in cash), as well as finished merchandise at a price of $218,054.89, which was not paid for, under an agreement that the factory should be operated by one of the Bacons, who was plaintiff's secretary and treasurer, for a term of five years, the Brotherhood bearing the operating expenses of the factory and providing sufficient funds, to be kept on deposit in Toledo banks, for the purpose. A minimum manufactured product of $1,000,000 in value was contemplated, one half (or so much thereof as it could use) to be retained by the Brotherhood for sale to its members, the other half to be taken by plaintiff and paid for on the basis of 5 per cent. above the cost of production.[1] The Brotherhood having failed to provide funds to pay expense of purchasing materials and operating the plant, and, owing to internal dissensions, having failed to distribute among its members any substantial proportion of the product manufactured between January 8, and June 30, 1920, and to provide funds therefor, plaintiff was obliged to assume the management and control and to use its own money and credit for the purpose stated, with the agreement of the Brotherhood's representatives, not only for providing the product for distribution to the Brotherhood's members and plaintiff's established trade, but to minimize its damages. Plaintiff thus purchased, in its own name, but really on account of and for the benefit of the Brotherhood, and pursuant to the agreement referred to, large amounts of materials necessary to the manufacture of the product in question, and took for its own use more of the product than it was required to take under the agreement mentioned, with the result that on June 30, 1920, the Brotherhood was indebted to plaintiff for the purchase price of finished merchandise on hand January 8, 1920, amounts advanced by plaintiff for purchases of materials, for labor in the factory, for overhead expenses in operating the same from January 8, 1920, to June 30, 1920, for interest on money advanced, and on account of contracts for materials not delivered, ag-

[1] Plaintiff also had the right to take, on the same basis, whatever of its share the Brotherhood failed to take.

gregating nearly $700,000 (less a credit of about $272,000), for which sums plaintiff claimed a lien upon materials and manufactured products still in its possession, in addition to the $10,440.83 unpaid balance on purchase price of real estate, for which plaintiff claimed a vendor's lien.

On or about June 30, 1920, it was agreed between plaintiff and the Brotherhood that the previous agreement be terminated, that the Brotherhood be relieved from all its obligations under its agreement with said Bacon, plaintiff assuming all liabilities and expenses incurred in the operation of the plant from January 8, 1920, to January 1, 1921, and agreeing to furnish to the Brotherhood membership such goods as plaintiff might then be manufacturing, or might thereafter manufacture at any time within the next 10 years, at cost of production plus 5 per cent.; also to supply the membership with certain articles of clothing not then manufactured by plaintiff, and other articles which it might thereafter undertake to furnish, also at manufacturer's prices plus 5 per cent.; the Brotherhood agreeing to use its good offices to place the Brotherhood membership in touch with plaintiff, to the end that it might obtain such patronage; that for the purpose of advising the membership as to the articles which could be so purchased, and the facilities for obtaining them, the Brotherhood should set aside one page of its monthly publication for publishing, during the life of the agreement, information necessary for advising the membership in the premises. The Brotherhood accordingly sold and transferred to plaintiff all materials and all manufactured products and proceeds resulting from the operation of the factory from January 8, 1920, at an agreed price, fully paid. Plaintiff executed a release of the balance due on the purchase price of the real estate, in consideration of which plaintiff was to have possession of the factory and the right to operate it until January 1, 1921; assumed and paid all expenses in connection with the operation of the factory from January 8, 1920, to January 1, 1921 (excepting $10,000, which had been furnished by the Brotherhood for that purpose); assumed all outstanding obligations and contracts, and itself operated the factory (obviously on its own account) until January 1, 1921, thereby paying out moneys, relinquishing claims and assuming or relinquishing liabilities or indebtedness in the aggregate of $475,000 above offsets and credits, as well as surrendering its right under the initial contract with respect to the purchase of one-half the merchandise manufactured by the Brotherhood.

To carry out its obligation under this last agreement of June 30, 1920, plaintiff agreed with a shoe manufacturer (operating a nonunion factory) to have distributed among the Brotherhood membership shoes made by such manufacturer, in accordance with the agreement between plaintiff and the Brotherhood. This arrangement was made with the consent and approval of the Brotherhood's representatives, with the understanding that the manufacturer would, if the agreement proved mutually agreeable, unionize his factory—the shoes meanwhile manufactured by him for distribution among the Brotherhood's membership to have impressed thereon a facsimile of the Brotherhood's Grand Seal, in lieu of the union label. Plaintiff also, through

arrangements with other manufacturers, obtained the right to acquire certain articles for distribution among the Brotherhood's membership in accordance with the agreement of June 30, 1920, furnishing the Brotherhood with advertising matter to be published in its journal. In January, 1921, the Brotherhood, through its executive board, sent out and widely distributed among the membership a circular asserting that the agreement of June 30, 1920, did not provide for any investment of Grand Lodge funds for the purchase of materials, supplies or expenses, nor for the maintenance of an office; that it did not create a co-operative department, and did not authorize the use of the Grand Lodge seal on any goods furnished the membership; that on learning that samples of shoes had been sent broadcast throughout the country bearing the imprint of the Grand Lodge seal, but not bearing the union label, and on inquiry of the Brotherhood's Grand President by whose authority the seal was so used, and request that he see that the use of the same on all merchandise was forthwith discontinued, it was advised by that officer "that the seal was to be used to identify goods as approved by us until the union label was arranged for and put on." The circular complained that it found in the December issue of the journal four pages of advertising with respect to the so-called co-operative department, and called the attention of the Grand President to certain announcements therein, set out in the bill, and reproduced in the margin hereof;[2] the circular declaring these statements misleading, because the Brotherhood was not operating or controlling any factories, had not so operated for some months past, and that when the members bought articles supposedly from the Grand Lodge under the name "Co-operative Department" they were in fact buying from the manufacturer; that, instead of having these statements corrected as requested, others as grossly misrepresenting the facts were contained in the January issue of the journal—for example—"overalls and jumpers produced by the Co-operative Department overall factory." The board expressed the fear that the so-called Co-operative Department, "which has apparently sprung up without any constitutional authority and without the consent of your board, will involve your organization in another industrial enterprise as costly, if not more so, than the last."

The bill further alleges that the purpose of the executive board in sending out this circular was to wreck the co-operative plan and agreement by preventing the Brotherhood membership from ordering merchandise from plaintiff, and inducing the belief that such plan was a fraudulent scheme promulgated by plaintiff to induce them to purchase from plaintiff goods which they otherwise would not have so purchased, and to believe that the plan violated the Brotherhood's constitution and was without authority, while in fact the truth was in

---

[2] "Buy all articles through your local secretary or mail order directly to United Brotherhood of Maintenance of Railway Employees and Railway Shop Laborers, Co-operative Department, Box 186, Toledo, Ohio." "Watch these pages for new articles which will be added to the list of factories already controlled by our Grand Lodge." "Buy all your shoes, gloves, overalls, jumpers, etc., from Co-operative Department of the Grand Lodge."

every respect to the contrary; that this circular was widely circulated and had the effect of causing the members of the Brotherhood to cease to order merchandise from plaintiff or from the Co-operative Department of the Brotherhood, and completely nullified all that plaintiff had accomplished up to that time by way of acquiring the good will and patronage of the Brotherhood members; that other officers of the Brotherhood refused to give plaintiff their good offices and to co-operate with it; that the action of the Brotherhood, through its executive board, made it impossible for plaintiff to continue to operate under the agreement of June 30, 1920, and that the consideration inducing plaintiff to enter into that agreement had thereby failed: that its effort to obtain the withdrawal of that circular, or the taking of other action to counteract its effect, having failed, and plaintiff's business having come practically to a standstill, plaintiff elected to rescind the agreement of June 30, 1920, with the Brotherhood and to be restored to its rights as they then existed, and has given notice to the Brotherhood of such rescission and tendered to the Brotherhood by the bill, and subject to plaintiff's lien, all of the merchandise, materials, and manufactured products to which plaintiff was to obtain title under the agreement of June 30, 1920, except so far as disposed of, and offering to credit on its claim against the Brotherhood an amount equal to the value on June 30 of such merchandise as has not since been disposed of.

The bill also charged that the Brotherhood was engaged in dissipating its properties; that it had sold many of them for less than had been offered to it by other persons; that there was grave danger that its assets would be so dissipated and lost as to destroy its ability to pay its just debts, including its indebtedness to plaintiff; that it intends to remove beyond the jurisdiction of the court such property therein as is movable for the purpose of defrauding plaintiff as a creditor, and for depriving the court of jurisdiction thereof, and that the Brotherhood was about to incumber its real estate and other immovable property within the jurisdiction of the court in fraud of plaintiff's rights; also that the Brotherhood has on deposit in Detroit and elsewhere large amounts of cash, and has in its possession negotiable securities of large value which plaintiff believes are about to be sent out of the United States for the purpose of placing them out of plaintiff's reach and out of the jurisdiction not only of the court below, but of all other courts in the United States. The bill asked relief by way of rescission of the contract of June 30, 1920, an accounting with respect to the amounts due plaintiff, the decreeing of a vendor's lien upon the real estate and a manufacturer's lien upon the personalty; a sale of the same to satisfy liens; a decree for the balance remaining unpaid; supplementary proceedings to collect such balance, and, pending final hearing, injunction restraining the removal of property from the jurisdiction of the court, receivership of all the Brotherhood property within the district, ancillary receivership proceedings in other jurisdictions, and general relief. This completes our summary of the contents of the bill.

Upon the filing of the bill an order was made, under section 57 of the Judicial Code (Comp. St. § 1039), for service of notice upon defendants to appear, plead, etc., and all were served outside the state of Ohio. The receivership application was set for hearing and notice ordered given defendants at the same time and in the same manner as the order above mentioned. A temporary order was made (afterwards continued in effect as a preliminary injunction) restraining defendants from removing any of the Brotherhood's property without the jurisdiction of the court. Before the date so set for hearing the receivership application defendants moved (appearing solely and specially for that purpose) to set aside the service of summons, of the restraining order, and of the order to show cause returnable June 4th, for lack of jurisdiction of the court over the persons of any of the defendants, and because the service in each case was beyond the jurisdictional limits of the court, no one of the defendants being a resident, citizen or inhabitant of the Northern district of Ohio or found therein, but all being citizens and inhabitants of districts other than the Northern district of Ohio. On June 6th this motion was overruled. Thereafter, and on the same day, defendants (again appearing solely and specially for the purpose) moved to dismiss the suit for like lack of jurisdiction over either of them, or either of them, in their individual or representative capacities.[3] This motion was overruled, and the motion for temporary injunction and appointment of receiver taken under advisement.

On the next day defendants, appearing, as stated, for the sole purpose of filing and making motion, and in terms expressly saving their exceptions to the denial of the motions to quash and dismiss before referred to, moved to dismiss the bill for lack of equity, absence of right to rescind the contract of June 30, 1920, and for other reasons, and in connection therewith made answer (under like protest of non-waiver, etc., as in the case of the motion to dismiss just referred to), denying plaintiff's right to rescind the contract referred to, the existence of vendors' or manufacturers' liens, and any and all liability asserted, and challenging in detail the prominent equities relied upon by plaintiff. On February 15, 1922, plaintiff filed an amendment and supplement to its bill of complaint, alleging the dissipation by defendants of large sums of money belonging to the Brotherhood, the withholding from the latter's Co-operative Department of large sums due that department, the transferring of Brotherhood real estate to a new corporation, the making of deposits of Brotherhood funds in a Canadian bank, the fact of suit in Michigan against the Brotherhood and three of the defendants alleging misappropriation of funds, the likelihood of other similar suits, a decrease in the Brotherhood's membership, the danger of its insolvency, an alleged deposit of about $88,000 of Brotherhood funds in a certain bank of Cleveland, Ohio, the name under which the deposits were carried being unknown. It prayed for

[3] This interpretation of the order in which motions were made not only seems to accord with the record, including the formal order of denial, but is in direct accordance with the unchallenged statement of defendants' counsel in brief.

the appointment of a receiver to take possession not only of all the Brotherhood's property generally within the Northern district of Ohio, but specifically of all moneys so on deposit in the Cleveland bank. A restraining order pending appointment of a receiver was also asked. Such order, as well as an order to show cause why a receiver should not be appointed, and "why ancillary proceedings for the appointment of ancillary receivers in other districts where said United Brotherhood may have property should not be authorized" was immediately made.

On February 24th defendants moved to vacate the restraining order and to quash the order to show cause upon the receivership application, likewise appearing solely and specially for that purpose. The court set this motion for hearing on March 13th, continuing the restraining order until that date, and making like orders and continuances until March 25th, meanwhile, on March 24th, overruling the motion to vacate the restraining order of February 15, 1922, and to quash the order to show cause made on that date in the receivership application, and appointing a special master to take testimony in support of and in opposition to the motion for appointment of receiver, the evidence on the respective sides to be produced by given dates, and the master's report to be filed by April 20th. The master was expressly authorized to take testimony, not only in the Northern district of Ohio, but "elsewhere in the United States." The restraining order was continued in effect until the filing of the master's report and the action of the court thereon. The appeal in No. 3725 (taken March 31, 1922) is from the orders of March 11th and March 14th, 1922, continuing the restraining order, and from the order of March 24, 1922, overruling the motion to dissolve the same, all of which relate solely to the moneys in the Cleveland Bank, jurisdiction over which was sought under the amendment and supplement to the bill filed February 15, 1922. The relief asked in the mandamus case, No. 3713 (petition filed April 5, 1922), relates solely to the proceeding for receivership over all the Brotherhood's assets and property in the Northern district of Ohio, including the deposits in the Cleveland bank (instituted under the amendment and supplement of February 15, 1922) and to the action with reference to ancillary receiverships elsewhere in the United States.

[1] It is obvious that the District Court has not acquired a jurisdiction over the persons of defendants authorizing the orders here assailed by the appeal and petition for mandamus respectively, unless the action taken by defendants amounted to a general appearance. The service outside the jurisdiction of the court of the notice to appear and plead, given under section 57 of the Judicial Code, made effective a jurisdiction to determine the existence of the asserted vendor's lien against the real estate and the claimed manufacturer's lien against the personalty; and to enforce the same by subjecting the property to such liens, if established. But the subject-matter of the orders here in question is not limited to an enforcement of these claimed liens, but includes an effort to obtain personal decree for the balance of the two asserted liens so far as not satisfied out of the

282 F.—13

proceeds of the property claimed to be impressed therewith,[4] as well as supplemental remedies by way of receivership, and perhaps otherwise, for the collection of such deficiency against defendants personally or against property other than that which is the subject of the asserted liens. It is fundamental that relief of that character cannot be had against nonresident defendants without personal service of process within the jurisdiction or such general appearance in the case as amounts thereto. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. We do not understand this general proposition to be denied. On the contrary, we understand the assertion of jurisdiction to make the orders here in issue (apart from the adjudication and enforcement of the vendor's and manufacturer's liens) to be based upon the proposition (by both the appellees in the equity suit and the respondent in the mandamus proceeding) that defendants effected a general appearance in the cause by the presentation of their several motions to set aside the service, to dismiss the proceeding and to dismiss the bill, for lack of equity, etc., in connection with the answer filed therewith.

[2, 3] As to the motion to set aside service, the objection seems to be not only that defendants were not entitled to have the service set aside, but that the motion included an effort to escape the effect of the restraining and receivership orders, so asking relief on the merits and thereby submitting their persons to the jurisdiction. We think this contention not good. We say this in recognition of the broad rule that a defendant by invoking the exercise of the court's jurisdiction by affirmative acts in recognition thereof, as by a motion to dismiss on the ground that the bill did not state a cause of action, or by asking relief on the merits, and before or in connection with making motion to set aside the service, will be deemed to have appeared generally, and so to have waived lack of personal jurisdiction. General Investment Co. v. L. S. & M. S. Ry. Co. (C. C. A. 6) 250 Fed. 160, 164, 162 C. C. A. 296; Dahlgren v. Pierce (C. C. A. 6) 263 Fed. 841, 846; Railroad Co. v. Morey, 47 Ohio St. 207, 24 N. E. 269, 7 L. R. A. 701. It is the general rule that the appearance of a defendant in court for the sole purpose of objecting, by motion, to the jurisdiction of the court over his person, is not an appearance in the action or a waiver of any defect in the mode or manner by which such jurisdiction is obtained. Smith v. Hoover, 39 Ohio St. 249.

[4] The restraining order, which was the subject of the motion, was not in terms confined to the real and personal property on which the vendor's and manufacturer's liens were claimed, but related to all of the movable property belonging to the Brotherhood and within the court's jurisdiction. The same is true of the receivership order. The motions to set aside service of order of appearance, restraining order and receivership order were properly linked together. All depended upon the same lack of personal jurisdiction. While but for the attempt to carry the permanent and temporary relief beyond that provided by section 57 the motion to set aside service, etc., would not have been

---

[4] Appellees' brief suggests also a liability in damages for breach of the contract.

good, yet in view of the real situation defendants were justified in seeking to set aside the service to the extent stated. Plainly a motion to set aside service of order to appear, as well as restraining and receivership orders, if limited to matters not germane to the enforcement of vendor's and manufacturer's liens, would not have been a general appearance.

[5, 6] It seems equally plain that such effect was not worked by the mere fact that the motion was too broad. That defendants were entitled to have the service set aside only in part did not necessarily convert their appearance for that sole purpose into a general appearance. The test is not whether defendants were entitled to have their motions allowed. The question is whether by making the motions they appeared generally.

"The question of general appearance is one of intent, actual or implied, and where the whole purpose of defendant's application to the court is to set aside an order because it has been made without personal jurisdiction over him, the conduct which will make the motion unavailing and destroy its basis must be clear and unequivocal." Dahlgren v. Pierce, supra, 263 Fed. at page 846. And see Citizens Savings, etc., Co. v. Ill. Cent. R. R. Co., 205 U. S. at page 59, 27 Sup. Ct. 425, 51 L. Ed. 703.

Here defendants disclaimed in the most solemn manner all intention of entering appearance except for filing and presenting that motion; they protested that the court had no jurisdiction over them "in their individual or representative capacities." Nothing could be clearer than an intent not to appear generally. See in this connection Board of Commissioners v. Keil (C. C. A. 6) 259 Fed. 76, 81, 170 C. C. A. 144. The fact that the court had not directed that the restraining order be served upon defendants is not significant, especially in view of our understanding that counsel had filed a præcipe for copies of the order for service upon defendants in connection with the service of the order for appearance, etc. Nor is it important that what is called an order to show cause was in reality merely a setting of the application for hearing and notice of motion.

[7, 8] Nor are we able to see that the obtaining (on the hearing of the motion to set aside service) of leave to amend the motion by inserting the name of a defendant not originally included in the notice worked a general appearance. Such action was directly germane to the motion to set aside service. Neither this motion, nor the motions to set aside service of the restraining and receivership orders, invoked the jurisdiction of the court upon the merits or upon any subject inconsistent with the motion under consideration. If our conclusion as to the effect of the first motion is correct, clearly the subsequent motions to dismiss and the answer upon the merits did not amount to a general appearance. After defendants had done all they could to avoid personal jurisdiction, they were at liberty to present meritorious defenses, and without losing the benefit of the formal motions, so long as they persisted in their protests against personal jurisdiction.

[9, 10] It results from these views that petitioners are entitled to the relief asked in the mandamus proceeding, No. 3713, setting aside

the orders of the court below therein enumerated, so far as they relate to the receivership proceedings over the deposits in the Cleveland bank, and to the ancillary receiverships elsewhere in the United States, including the reference to a master to take proofs. This court has undoubted jurisdiction to issue such writ of mandamus in aid of its general appellate authority. The action of the District Court being without jurisdiction to the extent stated, no question of discretion is involved. Petitioners should not be required to await the slow process of an appeal from such invalid order, whose operation meanwhile involves an encroachment upon their rights. It also follows that defendants' appeal in No. 3725, from the restraining and injunctive orders in question, is well taken, and the orders so appealed from are reversed.

[11] There remains the question whether the bill of complaint should be dismissed. Such dismissal could properly be made upon the reversal of the injunctive orders, if it clearly appeared that plaintiffs could not, in any event, obtain relief under the bill upon the merits, notwithstanding the court below had jurisdiction over the subject-matter. The reason most strongly urged by defendants for a dismissal of the bill is that no case is stated entitling plaintiff to a rescission of the agreement of June 30, 1920, not only because no such breach by defendants is shown as would entitle plaintiff to rescind, but because defendants cannot be placed in statu quo. If plaintiff's right to relief of some kind depended entirely upon the issuing of the circular we have referred to, much might be said in favor of the justice of some at least of the complaints therein made. But the bill goes farther, in the assertion that other officers, as well as local lodges, failed and refused to give plaintiff their good offices, and to co-operate with plaintiff in accordance with the agreement of June 30, 1920. We cannot say, from the bill, that this allegation may not be made good. Likewise we are unable to say with confidence, from the allegations of the bill alone, that the plaintiff may not be able to establish by proof one or more of its propositions here relied upon as supporting the right to rescind or to avoid the effect of the contract of June 30, 1920, as to the personal property—for example, that plaintiff is not shown to have accepted the Brotherhood's mere promise to perform the agreement of June 30, 1920, as satisfaction per se of its indebtedness to plaintiff on account of which its asserted manufacturer's lien was claimed—in connection with the asserted importance, as consideration for the contract of June 30, 1920, of the agreement for the Brotherhood's good offices and the asserted inadequacy of remedy by suit for damages; nor, generally, that the court below, which has jurisdiction over the asserted manufacturer's lien, may not, under the case as developed by testimony, be able to make a decree giving plaintiff some proper relief.

[12, 13] The relief, however, available to plaintiff under the bill is narrow. We think it plain that the alleged vendor's lien upon the real estate cannot be restored. The indebtedness for which the lien was claimed was fully and separately paid and discharged, not merely in money or by the making of an executory promise, but by a lease

of the real estate given plaintiff by defendants whereby plaintiff was given the possession of this real estate and the right to operate the same until January 1, 1921; the releasing of plaintiff's claim for the balance of the purchase price being deemed to be in satisfaction of the rental value of those premises for that period, and it being further agreed that the contract should have the effect of making the plaintiff the lessee of the premises from the 8th day of January, 1920, for the balance of the calendar year. By virtue of this lease, plaintiff actually enjoyed the use of the premises until January 1, 1921. Such enjoyment cannot be restored to defendants. It seems equally plain that without personal jurisdiction over defendants, plaintiff's relief must, at the best, be limited to a decree of rescission of the contract of June 30, so far as respects the personal property connected with the manufacturing operations and the restoration of the asserted manufacturer's lien thereon—a decree not enforceable against other property nor operating as an adjudication against defendants in other jurisdictions; in other words, a decree only in rem which may or may not be of advantage to plaintiff.

We, however, think we should not dismiss the bill, but that we should, without consideration on our part of the ultimate merits, leave the questions presented by the pleadings, both of fact and of law (except so far as passed upon in this opinion) to the final decree below. We take it for granted that the District Judge, upon being advised of our views as to the rights of petitioners in No. 3713, will promptly set aside the orders assailed therein and thus make unnecessary the issue of mandamus.

In No. 3725, the orders in question are reversed, and the record remanded to the District Court, with directions to take further proceedings consistent with this opinion.