## SALMON FALLS MFG. CO. v. MIDLAND TIRE & RUBBER CO.

(Circuit Court of Appeals, Sixth Circuit. December 15, 1922.)

No. 3706.

1. **Judgment ☞17(11)—Personal judgment cannot be rendered, where jurisdiction is secured only by attachment of property.**

An action against a foreign corporation, where property of the corporation was attached, but there was no personal service on defendant, or general appearance by it, was merely a proceeding in rem, and any judgment therein could be enforced only against the property attached, and

would not sustain an action thereon against the defendant, either within that jurisdiction or elsewhere.

2. Appearance ⊕⟹9(2)—Defendant's appearance to object to jurisdiction not submission to jurisdiction.

Defendant's appearance in court for the sole purpose of objecting to the jurisdiction of the court over its person was not an appearance in the action, or waiver of any defect in the manner by which such jurisdiction was sought to be obtained, though, if defendant seeks any relief inconsistent with its claim of want of jurisdiction, it consents to the jurisdiction.

3. Appearance ⊕⟹9(1)—General appearance is question of intent.

The question of general appearance is one of intent, actual or implied, and where the whole purpose of defendant's application to the court is to protect itself from personal jurisdiction, the conduct which will make its motion unavailing and destroy its basis must be clear and unequivocal.

4. Appearance ⊕⟹9(7)—Special appearance to protect rights in attached property does not authorize personal judgment.

In an action against a foreign corporation, whose property within the state was attached, a special appearance, expressly made for the sole purpose of protecting the defendant's rights in the property attached, was not inconsistent with defendant's objection that the court had acquired no personal jurisdiction over it, and did not give the court jurisdiction to render a personal judgment against defendant.

5. Judgment ⊕⟹812(2)—Adjudication that attached property is not liable does not bar proceeding against defendant personally.

Where the court acquired jurisdiction by attachment of property of a nonresident defendant, had defendant's motion to limit relief to the value of the attached property been granted, an adjudication that the property was not liable for the debt sued on would not bar a subsequent action against the defendant, where personal service was secured, any more than a judgment against the property would sustain a subsequent action against defendant personally.

6. Appeal and error ⊕⟹1047(5)—Refusal to require production of books by plaintiff held not prejudicial.

Where defendant claimed the plaintiff's failure to take up a draft for the price of goods on presentation was due to financial disability, and not to want of notice, as plaintiff claimed, but plaintiff introduced evidence, which was uncontradicted, that it had arranged to borrow money necessary to take up the draft, the production of plaintiff's bank books would not have sustained the defense, so that the refusal to require such production was not prejudicial to defendant.

7. Evidence ⊕⟹368(12)—Dismissal is only remedy for plaintiff's failure to produce books called for.

The only remedy given defendant for plaintiff's failure to produce books and accounts, called for under Rev. St. § 724 (Comp. St. § 1469), is the dismissal of plaintiff's suit; the remedy to procure evidence contained in the books being by subpœna or by secondary proof of their contents, if defendant had knowledge that plaintiff's books would show its financial inability to pay the draft.

8. Sales ⊕⟹184—Seller cannot change from three-day draft to sight draft without giving buyer notice in time to protect itself.

Where the seller of goods, on notifying the buyer of their shipment, stated that three-day draft would be drawn for the purchase price, payable at a bank where delivery was to be made, which was not the buyer's place of business, it was a breach of the seller's duty thereafter to draw a sight draft for the goods, with instructions to the bank to return the draft to the seller if it was not paid on presentation, without giving the buyer notice that the sight draft had been drawn in time to permit it to protect the draft.

⊕⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**9. Trial ⬅️256(11)—Where no exception to instruction taken, request for further instructions as to particular testimony held necessary.**

Where no exception was taken to the instruction regarding the effect of custom on the duty of a bank to obey a seller's instructions to return a sight draft, if not paid for on presentation, and there was testimony of subsequent telephone instructions to the bank to make a second effort to locate the drawee, a request for particular instructions with reference to that testimony was necessary, if such instructions were desired.

**10. Appeal and error ⬅️981—New trial ⬅️99—Ruling on new trial on ground of new evidence not reviewable, unless discretion is abused.**

A motion for new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial judge, and his ruling cannot be reviewed, in the absence of abuse thereof.

In Error to the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Action at law by the Midland Tire & Rubber Company against the Salmon Falls Manufacturing Company, begun in the state court, by which funds of the defendant within the state were attached. Judgment for the plaintiff, after removal to the federal court, for the full amount of its damages, notwithstanding defendant's motion to limit recovery to the value of the property attached, and defendant brings error. Judgment modified, by limiting the enforcement thereof to the property attached, and, as modified, affirmed.

W. Lloyd Allen, of Boston, Mass. (Bayly, Simmons & De Witt, of Cleveland, Ohio, on the brief), for plaintiff in error.

Lowry F. Sater, of Columbus, Ohio (L. F. McGrath, of Cleveland, Ohio, and Jos. B. Shepler, of Coshocton, Ohio, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Defendant in error (plaintiff below) is an Ohio corporation, doing business at Coshocton, Ohio. Plaintiff in error (whom we shall call defendant) is a Massachusetts corporation, doing business at Salmon Falls, N. H. Plaintiff sued defendant in a state court of Ohio for failure to deliver 64,000 pounds of building fabric, the remainder of an amount contracted to be delivered by defendant to plaintiff between June and November, 1919, at 73 cents per pound. Defendant not being a resident of Ohio, and presumably not constructively within that state, no service of process was had on it. When the suit was begun in the state court, an attachment was issued, and funds of defendant to the amount of approximately $2,000 were seized. Thereupon the suit was removed by defendant to the court below, presumably on the ground of diversity of citizenship. The defendant, for the purpose of limiting the recovery to the property attached, appeared specifically for that purpose, denying jurisdiction otherwise over it, and denying generally the merits of plaintiff's petition. At the opening of the trial defendant moved the court to limit the scope of the hearing to the value of the property attached. This

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

request was not at the time passed upon, and the trial proceeded,[1] resulting in verdict for plaintiff for more than $30,000, and personal judgment thereon against defendant in the full amount of the verdict. The asserted error most prominently urged here is directed to the refusal of the trial court to limit the recovery to the value of the attached property; error, however, being assigned with respect to proceedings upon the trial.

[1] The situation, in the absence of personal service on defendant or general appearance by it, was originally simple. It was merely a proceeding in rem; the effect of recovery would be merely to subject the attached property to the judgment. Whatever the form of the verdict, no execution could issue against other property, nor could action upon the judgment be maintained either within the jurisdiction of the trial court or elsewhere. This rule is fundamental. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Grable v. Killits (C. C. A. 6) 282 Fed. 185, 194. There having been no service of process, the suit never became a personal one, unless the defendant has appeared generally therein.[2] No such appearance was made in terms.

[2] The sole ground on which personal judgment against defendant was permitted, and is now sought to be sustained, is that defendant, by answering plaintiff's petition, and by participation in the trial upon the merits (notwithstanding its protest and asserted nonwaiver of jurisdiction over its person, and denial of any right to recover beyond the value of the property attached), effected a general appearance in the cause, so submitting itself to recovery of personal judgment therein. We are unable to agree with this conclusion. In saying this we fully recognize that, had defendant, while protesting against the court's jurisdiction to render personal judgment without reference to the value of the attached property, yet asked relief on the merits beyond that value, whether before or in connection with the making of its protest, would be deemed to have appeared generally, and so to have waived lack of personal jurisdiction. Gen. Investment Co. v. L. S. & M. S. R. Co. (C. C. A. 6) 250 Fed. 160, 164, 162 C. C. A. 296; Dahlgren v. Pierce (C. C. A. 6) 263 Fed. 841, 846; Grable v. Killits, supra (C. C. A.) 282 Fed. at page 194; Railroad Co. v. Morey, 47 Ohio St. 207, 24 N. E. 269.

According to the general rule, however, defendant's appearance in court for the sole purpose of objecting to the jurisdiction of the court over defendant's person was not an appearance in the action, or waiver

---

[1] The judge remarked that he thought it a question "of the form of the entry which the judgment takes; if a judgment is entered, * * * I will take care of this question at the proper time." The motion was not formally overruled, except by the judgment entry.

[2] Defendant's removal of the case from the state court did not amount to a general appearance, no matter whether the appearance in the state court was stated to be special, and for the sole purpose of presenting the removal petition, or whether it was without restriction of purpose of such appearance. Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517; Wabash Western R. Co. v. Brow, 164 U. S. 271, 278, 17 Sup. Ct. 126, 41 L. Ed. 431; Cain v. Publishing Co., 232 U. S. 124, 131, 34 Sup. Ct. 284, 58 L. Ed. 534 et seq.

of any defect in the manner by which such jurisdiction was sought to be obtained. Grable v. Killits, supra, Smith v. Hoover, 39 Ohio St. 249. That in its pleading and in its motion to limit the recovery to the property attached defendant was not invoking the exercise of the court's jurisdiction, and was not asking relief on the merits, except so far as it affected the attached property, plainly appears. The special answer alleges that defendant, "not waiving, but expressly relying, upon its objection to the jurisdiction of this court over it, and not subjecting itself thereto, but appearing specially and only *for the purpose of protecting any interest* which it may have in any of the credits or choses in action now subject to and burdened with the attachment, and for answer to the first cause of action in plaintiff's amended petition contained, *for the sole and single purpose of protecting its property under said attachment,* admits," etc. Issue was thus joined on the merits only for the purpose and to the extent so stated. Defendant's motion made at the opening of the case, and before any testimony was introduced, was equally explicit, thus:

"This defendant, the Salmon Falls Manufacturing Company, at this time, at the beginning of this case, and at its first opportunity, moves the court *to limit the scope of the hearing* in this case *to the value of the property attached.*"[3]

[3] That this was defendant's first opportunity to so move is clear, and it is difficult to see in what words defendant's contention could be more explicitly stated. We have held that the question of general appearance is one of intent, actual or implied, and that where the whole purpose of the defendant's application to the court is to protect itself from personal jurisdiction, the conduct which will make the motion unavailing and destroy its basis must be clear and unequivocal. See Dahlgren v. Pierce (C. C. A.) at page 846; Grable v. Killits (C. C. A.) 282 Fed. at page 195. See, also, Citizens Savings & Trust Co. v. Railroad Co., 205 U. S. 46, 59, 27 Sup. Ct. 425, 51 L. Ed. 703. As applied to this case, we see no inconsistency between the rule so stated and the expression in Wabash Western R. R. Co. v. Brow, 164 U. S. at page 278, 17 Sup. Ct. at page 128 (41 L. Ed. 431), to the effect that "a voluntary appearance * * * *sometimes* may result from the act of the defendant, even when not in fact intended."

[4] The denial of personal jurisdiction, and the attempt to limit the scope of the hearing to one in rem—that is to say, to a recovery to be satisfied only out of the attached property—involved no inconsistency whatever.[4] The trial of the action, if limited to satisfaction out of the property attached, involved precisely the same defense to the merits as if personal judgment was to be rendered. If the conclusion of the court below is correct, it is not readily perceivable how defendant could at one and the same time have contested jurisdiction over its person and exercised the right to defend the action to the extent of the value of the attached property. If the decision below is right, defendant

[3] All italics in this opinion ours, unless otherwise stated.

[4] There was in fact no denial of jurisdiction to enter judgment in rem, nor even any attack upon the validity of the attachment.

could deny personal jurisdiction only by surrendering its defense to a recovery to be satisfied only out of the attached property.[5] Nor, in our opinion, did defendant waive its objection to personal jurisdiction by participating in the trial after ineffectual attempt to so limit recovery. This is so not only because such participation, including motion to direct verdict in its favor for failure to make out a case, or (if such were the fact) because also of plaintiff's failure to produce its books, was applicable directly as a defense to a recovery in rem, but for the further reason that defendant did not waive its objection to personal jurisdiction by participating in the trial upon the merits after its motion to limit recovery was denied, so long as it persisted in its protest against personal liability. Norfolk Southern R. Co. v. Foreman (C. C. A. 4) 244 Fed. 353, 357, 156 C. C. A. 639 and cases there cited; Grable v. Killits (C. C. A.) 282 Fed. at page 195.

[5] Nor do we see any merit in the suggestion that, had defendant's motion to direct verdict in its favor been sustained, such action would be an adjudication against the maintaining of future action in a court having personal jurisdiction. Had defendant's motion to limit relief to the value of the attached property been granted, as it should have been, a verdict in the amount rendered, followed by judgment thereon, would not sustain a suit in any court; nor would it be admissible in evidence in any other proceeding not affecting the attached property. Cooper v. Reynolds, 10 Wall. (77 U. S.) 308, 319, 19 L. Ed. 931; Grable v. Killits (C. C. A.) 282 Fed. at page 197; Cheshire Nat. Bank v. Jaynes, 224 Mass. 14, 18, 112 N. E. 500. Likewise, a verdict in defendant's favor would not protect it from further prosecution against its other property or against it personally provided jurisdiction therefor were obtained. Cheshire Nat. Bank v. Jaynes, supra. Upon the record in this case the result stated as applicable to either of the above contingencies would equally ensue whether defendant's motion to limit recovery was granted or denied.

We are cited to no controlling federal authorities, no have we found any, in our opinion inconsistent with the views we have expressed. It scarcely need be said that decisions of state courts, so far as inconsistent with the rule in the federal courts, are not binding upon the latter. Mechanical Appliance Co. v. Castleman, 215 U. S. 437, 443, 30 Sup. Ct. 125, 54 L. Ed. 272. Our conclusion is, moreover, directly and specifically sustained by Cheshire Nat. Bank v. Jaynes, 224 Mass. 14, 112 N. E. 500, which involved to all practical purposes, the precise question here presented. The case is directly in point, and we entirely approve both its reasoning and conclusion. The fact that the case involved the Massachusetts statute does not detract from its persuasiveness. Not only is the decision based upon general law as well as upon statute, but the latter is not so different in principle from the

---

[5] We may remark in passing that defendant's answer, limited as has already appeared, cannot properly be said to have enabled defendant to contest plaintiff's claim otherwise than as enforceable out of the attached property, nor that, while defendant embraced its first opportunity to object, its objection to the jurisdiction was partial and not entire. The contrary, we think, appears by the considerations to which we have called attention.

Ohio statute as to make the court's reasoning on that score inapplicable. So far as concerns this branch of the case, the infirmity in the action of the trial court is not in permitting verdict for the full amount of plaintiff's claim, nor necessarily in rendering judgment in form for the full amount of the verdict, but in not confining the enforcement of the judgment to the attached property.

Turning to the merits: Under the contract in suit the merchandise was to be shipped on bill of lading with sight draft attached. Plaintiff had not always promptly met drafts for former shipments. On November 17, 1919, defendant advised plaintiff that it would at once complete shipment of the order provided plaintiff would "meet payment of draft promptly," and, on December 3d, that it would make the shipment, allowing three days to honor drafts to be made through the Pottstown, Pa., bank, to which city plaintiff directed shipment to be made (plaintiff had no office there), and that "if not honored within this time we will reship the cloth for our own account." On December 6th the goods were shipped, and two days later defendant wrote plaintiff of the fact, stating, however, that the shipment was made "on sight draft as per the terms of sale"; that it had notified the Pottstown bank to return all papers in case the draft was not paid on presentation, and adding that the laws of Pennsylvania did not allow days of grace on sight drafts. On December 10th, in answer to plaintiff's inquiry as to the time and route of shipment, defendant wired, stating those facts, but without mention of the sight draft. There was undisputed testimony that plaintiff did not receive defendant's letter of December 8th until about noon of the 10th. There was testimony that immediately upon such receipt plaintiff sent to Pottstown its representative, who upon his arrival the next day was informed by the bank in question that it had received the draft on the morning of the 10th, and had returned it on the evening of that day because unpaid, and that plaintiff on the next day wired request to defendant to have the draft returned to Pottstown. Defendant replied that the return of the draft was wholly due to plaintiff's fault and that defendant should reship the goods. Six days later defendant offered to deliver the shipment to plaintiff at a price of $1.20 per pound upon receipt of certified check before delivery. This meant an advance of $29,438.60 above the contract price of $45,422.29. Meanwhile the original draft had been held at the Boston bank until December 15th when it was returned to defendant. Plaintiff declined to pay the advanced price and this suit and attachment thereon followed. Upon the trial the most prominent issues upon the merits were addressed to plaintiff's contention that it was defendant's duty to make draft on three days' sight, and that defendant's action in limiting it to one day was intended to deprive plaintiff of opportunity for taking up the draft and giving defendant opportunity thereby to force a larger price; and to defendant's contentions not only that plaintiff was at fault in not paying promptly, but that its failure to pay was due to its lack of financial ability to do so.

[9] Defendant, in writing, requested plaintiff to produce on the trial (which was a few weeks distant) 26 specified items (as well as an omnibus item) of papers, documents, books, correspondence, etc. Defend-

ant's only complaint of nonproduction relates to the items of plaintiff's "bank book" and "all bank statements" for the period of November, December, and January, which defendant desired as evidence that plaintiff was not in financial condition to take up the draft. A request for ruling on that demand in connection with the cross-examination of plaintiff's witness was passed over, as not proper cross-examination and without exception. It was later renewed at the close of defendant's testimony, and again at the close of all the testimony. Whether or not the trial judge rightly held that the statute invoked by defendant (Rev. Stat. U. S. § 724 [Comp. St. § 1469]) contemplated an actual hearing upon the application and a formal order thereon, which was not had except as already stated,[6] we think the court's action in that regard nonprejudicial. The only testimony upon the subject of plaintiff's ability to pay the draft is that of its general manager that, prior to the morning of December 10th:

We had made arrangements for the money. I had made arrangements with the Commercial National Bank at Coshocton to borrow $25,000. That was along about the 7th or 8th of December, 1919."

This testimony was undisputed. It is difficult to see what substantial light would be thrown upon the question of plaintiff's ability to pay the draft by the mere production of its bank book and bank statements, wholly disconnected from evidence otherwise of its financial condition. This difficulty is the greater in view of plaintiff's practical admission that it had not sufficient funds in hand, but was obliged to borrow, implied by the statement that it had arranged with the local bank to furnish more than one-half the required amount; no effort being made to dispute this latter statement.

[7] Moreover, if defendant had knowledge sufficient to justify its formal offer, made on the renewal of its motion at the close of all the testimony, to show that the books, if produced, would indicate plaintiff's financial inability to take up the draft for lack of funds to meet it, it would seem that either a subpœna or secondary proof of the contents of the books would accomplish defendant's purpose. Under the statute invoked, defendant's only remedy for failure to comply with an order to produce was the dismissal of plaintiff's suit. Upon this record we are not satisfied that defendant is entitled to complain of the court's action in this respect.

[8] In the course of the charge the jury was instructed that the word "promptly," contained in defendant's telegram of November 17th heretofore referred to, did not mean "at sight," and that defendant, having advised plaintiff that it would be allowed three days to honor the drafts (this was done by defendant's letter of December 3d), could not change the three-day period so limiting it to one day "unless it were done at such time as would avoid surprise on the part of the plaintiff and so operate as not to prejudice its rights"; that it was defendant's duty, under the circumstances of the case, to have the sight draft held at the Pottstown bank for three days for payment by plaintiff; that if

6 See Carpenter v. Winn, 221 U. S. 533, 31 Sup. Ct. 683, 55 L. Ed. 842; Owyhee Co. v. Tautphaus (C. C. A. 9), 109 Fed. 547, 48 C. C. A. 535.

defendant caused the draft to be sent back from the Pottstown bank on December 10th, it did not perform its duty under its contract; and that if defendant was responsible for the failure of the return of the draft to the bank after it had been sent away from the Pottstown bank it "breached its contract." There was further instruction that the plaintiff was not required to tender or offer to make payment, "if it was reasonably certain" that the tender of the money at the Pottstown bank would be an idle ceremony, and that the acceptance and delivery of the draft would be refused; also that, in view of the instructions given by the defendant to the Pottstown bank (that if the draft was not paid on presentation of papers it should be returned without delay), the case is not controlled by any custom existing in the banks of Pennsylvania.

[9] Upon the case as presented below we think there was no error in the instructions given. No attempt was made to show that plaintiff had been apprised, between the letter of November 17th and the letter received on December 10th, that a sight draft was to be sent. Nor is there any explanation of the change from the provision for a draft at three days, except as already stated generally in this opinion. The charge upon the subjects of tender and waiver thus correctly stated the law. No exception was taken to the instruction regarding the effect of custom upon the duty of the Pottstown bank to obey defendant's instructions. However, the charge was not made incorrect by the fact that there was testimony of subsequent telephone instructions by defendant to make a second effort to locate the plaintiff. If defendant desired further instructions on that phase of the case it should have so requested.

[10] The motion for new trial by reason of newly discovered evidence was addressed to the sound judicial discretion of the trial judge, which we cannot review in the absence of abuse thereof. Holmgren v. United States, 217 U. S. 509, 521, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Big Brushy Co. v. Williams (C. C. A. 6) 176 Fed. 529, 533, 99 C. C. A. 102, and cases there cited. The record indicates no such abuse.

It results from these views that the verdict should stand. The judgment, however, should be so amended as to make it clear that the recovery is to be satisfied only from the attached property, and that defendant is not bound thereby as upon a personal judgment. To enable such amendment, the judgment of the District Court is reversed, and the record remanded to the District Court, with directions to enter a new judgment not inconsistent with this opinion.

Plaintiff in error will recover its costs of this court.