## NORFOLK SOUTHERN R. CO. v. FOREMAN.

(Circuit Court of Appeals, Fourth Circuit. July 16, 1917.)

No. 1505.

1. ADMIRALTY ⬥⟿46—PROCESS—STATE STATUTE.
   A state statute as to how process may be served on a railroad corporation is not controlling. in a proceeding in personam in admiralty, to which the Conformity Act June 1, 1872, c. 255 (17 Stat. 196), does not apply.

2. ADMIRALTY ⬥⟿46—PROCESS—SERVICE ON CORPORATION'S SECRETARY.
   Service of citation on the secretary of a corporation in a proceeding in personam against it in admiralty is good, he being such a head officer as secures knowledge thereof to it.

3. APPEARANCE ⬥⟿24(1)—ACTIONS—SERVICE OF PROCESS—WAIVER OF OBJECTIONS.
   The court having jurisdiction of the subject-matter, and the parties being within its territorial jurisdiction, and defendant's contention on special appearance being that the service of process on its secretary was not good service on it, it waives its rights, in that respect. by answering and going to trial on the merits, after such question is decided against it; especially where it not only asked that the service be quashed, but sought to procure a dismissal.

4. SHIPPING ⬥⟿84(3)—INJURY TO SERVANT—DANGEROUS WORK—FACILITIES FOR RESCUE.
   Devices and facilities reasonably fit and accessible to effect a rescue should be provided where an employé is required to work where he may be subjected to the danger of being thrown into the water.

5. ADMIRALTY ⬥⟿70—PLEADING AND EVIDENCE.
   Under the informal proceedings in admiralty, unless defendant pleads surprise and procures a continuance, the court may, in action for death of an employé, allow testimony of concurring circumstances indicating negligence, and base a decree thereon, though not particularly or specifically pleaded, especially when they are the dangerous character of the work required to be done if performed by an inexperienced man, as was deceased.

6. ADMIRALTY ⬥⟿118—REVIEW—DECISION ON FACTS.
   Decision of the judge in an admiralty case on questions of fact, there being involved conflicting evidence or the credibility of witnesses examined before him, will be reversed only if manifestly contrary to the evidence.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

In Admiralty. Action by George W. Foreman, administrator of Alonzo Skinner, deceased, against the Norfolk Southern Railroad Company. Decree for libelant, and respondent appeals. Affirmed.

James G. Martin, of Norfolk, Va., for appellant.

S. Burnell Bragg and Luther B. Way, both of Norfolk, Va. (Pender & Way, of Norfolk, Va., on the brief), for appellee.

Before PRITCHARD and KNAPP, Circuit Judges, and SMITH, District Judge.

SMITH, District Judge. This is an appeal in admiralty from a decree of the court below in favor of the appellee for $2,400, as damages due to the children of one Alonzo Skinner for his death through the negligence of the appellant. The appellant, the defendant below, is a domestic corporation of the state of Virginia, having its principal office in the city of Norfolk. The deceased, for whose death damages are claimed, was at the time of his death a resident of and employed in the city of Norfolk. The place where the death and the alleged act of negligence took place was in the port of Norfolk, and the plaintiff is a domestic administrator in Norfolk of the deceased. The statute of Virginia (Code, § 2902) provides that, where death has ensued from the negligence of those in charge of a ship or vessel, the same right of action which the deceased would have had if death had not ensued shall survive and continue. The appellant was the owner of the tug Lynnhaven, and this libel in personam was filed against the appellant, the Norfolk Southern Railroad Company, as the party responsible for the negligence of its employés in charge of that tug in causing the death of Skinner. The monition was served by the marshal on the secretary of the Norfolk Southern Railroad Company by delivering a true copy to him in person at the principal office of the Norfolk Southern Railroad Company in the city of Norfolk. The respondent then filed an appearance stating that it appeared specially in the cause and moved to quash the return and dismiss the libel and monition, for that it appeared that the monition had been served on the secretary of the respondent corporation, whereas the secretary was not a person upon whom service could be made under the statutes and laws of the state of Virginia. The court below heard the motion to dismiss the libel and monition and to quash the libel and to quash the monition, and quash the marshal's return on the monition, and overruled the motion and ordered the respondent to answer. Thereupon respondent filed its answer to the merits (without therein expressly reserving any rights under its previous special appearance), and the cause went to trial on the merits before the court. A large amount of testimony was introduced by both libelant and respondent, and the court rendered its decree on the merits in favor of libelant, for $2,400. From that decree this appeal is taken.

Three questions are made by the assignments of error: (1) That the court should have quashed the return and dismissed the libel and monition; (2) that the court erred in finding the respondents guilty of negligence; (3) that the court erred in not finding the deceased guilty of contributory negligence.

[1, 2] The statute of Virginia (Code, § 3225) provides that process against a railroad corporation may be made on its president, cashier, treasurer, general superintendent, or any one of its directors. Were the present cause an action at law, then under the conformity act of 1872 the Virginia statute might be held as controlling. It is a proceeding in admiralty, to which the conformity act does not apply; and the inquiry, then, is whether the service on the secretary was a good service on a corporation according to admiralty practice. The statute of Virginia could not possibly control the practice in the exclusive jurisdiction of a court of admiralty. If, when the statute of Virginia was enacted, by the practice of the court of admiralty a corporation could be served by a service on its secretary, then, to hold that the statute could restrict the court of admiralty in the exercise of its jurisdiction by limiting the service to only other officers—say to officers far removed from the point at which the court of admiralty sat—would seem to lead to the power of the state to practically deprive the court of admiralty of its salutary and summary jurisdiction in personam.

There appears to be no statute of Congress or rule of the District Court below expressly providing how citations in admiralty shall be served nor any decisions of any court of admiralty on the point. Walker v. Hughes (D. C.) 132 Fed. 885.

In the matter of In re Louisville Underwriters, 134 U. S. 488, 10 Sup. Ct. 587, 33 L. Ed. 991, the Supreme Court held that where the libelee (a foreign corporation) had, in pursuance of a state statute, appointed an agent in New Orleans on whom legal process might be served, then a monition in admiralty from the United States District Court for the Eastern District of Louisiana could also be served on that agent. This followed not from the permission or provision of the state statute, but because service on an agent was a good service in admiralty, and there was an agent (no matter why appointed) within the territorial jurisdiction who could be served.

In United States v. Bedouin Steamship Co. (D. C.) 167 Fed. 863, where the service on an agent of a foreign corporation was upheld, it does not appear that any reference was made to any authority based on a state statute. In the cases of Doe v. Springfield Boiler Co., 104 Fed. 684, 44 C. C. A. 128, and Insurance Co. of North America v. Frederick Leyland & Co. (D. C.) 139 Fed. 67, it was held in the cases of nonresidents, that where the state statutes required the designation of, or itself designated, the agents of foreign corporations on whom process could be served, that a service could be made of a monition in admiralty on the same agents. Nothing in these cases is restrictive of the power of a court of admiralty to serve either a domestic or a foreign corporation according to its established practice. A court of admiralty could not serve in personam a foreign nonresident corporation by extraterritorial service of the monition. Where, however, in obedience to state law, an intraterritorial agent exists on whom process can be served, then the court of admiralty can have its process served on that agent within the jurisdiction in like manner as a state court could do, and in like manner also as the court of admiralty might do if the agent within

its territorial jurisdiction were appointed without reference to any state statute.  U. S. v. Bedouin S. S. Co., supra.

The Supreme Court has decided in Kansas City R. R. Co. v. Daughtry, 138 U. S. 298, 305, 11 Sup. Ct. 306, 308 (34 L. Ed. 963), that "at common law service was made on such head officer of a corporation as secured knowledge of the process to the corporation." There is no distinct separate adjudication to the same effect with regard to a court of admiralty, but it would seem to follow necessarily that the same rule held good in any court of record, and especially in a court of admiralty.  By the general concensus of authority, the secretary of a corporation is such a head officer, and the learned judge below did not err in overruling the motion to quash the service.

[3] But apart from this, it appears that the appellant respondent, after the decision of the motion, answered and went to trial on the merits. The appellant insists that this was no waiver of its rights under its so-called special appearance, but that when that was overruled it had the right to defend itself on the merits, and reserve the right, should the merits be decided adversely to it, to renew its objection in this court, and have the adverse judgment reversed on, this preliminary ground; that it was not bound to take the chances of being wrong on this preliminary question, but had the right to appear and contest the cause on the merits, and reserve this preliminary question as a resource should the merits be decided against it.  There are, however, two sets of chances, and the argument should hold conversely. Why should the appellant have the right to compel the chances in its favor by taking the benefit of the trial on its merits, and the benefit of the judgment if in its favor, whilst denying that benefit to the appellee by holding in reserve this preliminary question?  Is the appellant to be in the court for its purposes and at the same time out of it for the purposes of the appellee?

There is a great mass of conflicting decisions on this subject of so-called special appearances and their effect.  Some jurisdictions uphold the right to appear specially, and, if the question be decided adversely to the party so appearing, then to file answers to the merits and contest those merits on trial, taking the chance of a favorable decision, and, if the decision on the merits be adverse, still to retain the right to make the question of power or jurisdiction advanced by the special appearance. Some jurisdictions deny this right, and in one jurisdiction (Texas) the statutory provision is to the effect that any such appearance shall be deemed and treated as a general appearance.  On an appeal from a similar statutory provision of the state of Kentucky in the case of Western Indemnity Co. v. Rupp, 235 U. S. 261, 35 Sup. Ct. 37, 59 L. Ed. 220, the Supreme Court held:

"That a state, without violence to the 'due process' clause of the Fourteenth Amendment, may declare that one who voluntarily enters one of its courts to contest any question in an action there pending shall be deemed to have submitted himself to the jurisdiction of the court for all purposes of the action, and may attach consequences of this character even to a special appearance entered for the purpose of objecting that the trial court has not acquired jurisdiction over the person of the defendant, is settled by the decision of this

court in York v. Texas, 137 U. S. 15 [11 Sup. Ct. 9, 34 L. Ed. 604]; followed in Kauffman v. Wooters, 138 U. S. 285 [11 Sup. Ct. 298, 34 L. Ed. 962]."

The court proceeds:

"A nonresident party against whom a personal action is instituted in a state court without service of process upon him may, if he please, ignore the proceeding as wholly ineffective, and set up its invalidity if and when an attempt is made to take his property thereunder, or when he is sued upon it in the same or another jurisdiction. Pennoyer v. Neff, 95 U. S. 714, 732, 733 [24 L. Ed. 565]; York v. Texas, 137 U. S. 15, 21 [11 Sup. Ct. 9, 34 L. Ed. 604]. But if he desires to raise the question of the validity of the proceedings in the court in which it is instituted, so as to avoid even the semblance of a judgment against him, it is within the power of the state to declare that he shall do this subject to the risk of being obliged to submit to the jurisdiction of the court to hear and determine the merits, if the objection raised to its jurisdiction over his person shall be overruled. This prevents a defendant from doing what plaintiff in error has attempted to do in the present case—that is, to secure, if possible, the benefit of a binding adjudication in its favor upon the merits, through the exercise of the court's jurisdiction, while depriving its adversary of any possibility of success by reserving an objection to the jurisdiction of the court to render any judgment against it."

In the federal courts, however, it has been held that defendants appearing in the court under protest, with the sole purpose of denying the jurisdiction of the court, do not waive their rights, if such question be decided adversely to them, by then contesting the case on the merits. Western Indemnity Co. v. Rupp, supra; Harkness v. Hyde, 98 U. S. 476, 25 L. Ed. 237; Southern Pac. Co. v. Denton, 146 U. S. 202, 206, 13 Sup. Ct. 44, 36 L. Ed. 942; Mexican Central Ry. Co. v. Pinkney, 149 U. S. 194, 13 Sup. Ct. 859, 37 L. Ed. 699; Galveston, etc., Ry. v. Gonzales, 151 U. S. 496, 14 Sup. Ct. 401, 38 L. Ed. 248; Citizens' Savings & Trust Co. v. Illinois Cent. R. R. Co., 205 U. S. 46, 27 Sup. Ct. 425, 51 L. Ed. 703; Davidson Marble Co. v. Gibson, 213 U. S. 10–19, 29 Sup. Ct. 324, 53 L. Ed. 675.

This ruling, however, has been made in cases where the objection lay to the entire lack of jurisdiction of the court to hear the cause, either by reason of its inability to serve a nonresident defendant within the jurisdiction, or by reason of the statutory limitation of jurisdiction in the court affecting its power to assert jurisdiction; for as the Supreme Court adds in the case of Western Indemnity Co. v. Rupp, supra, on page 273 of 235 U. S., on page 41 of 35 Sup. Ct. (59 L. Ed. 220):

"As appears from Southern Pacific Co. v. Denton, and other cases of the same class above cited, the distribution of original and appellate jurisdiction in the federal courts is such as to sometimes give an advantage of this kind to defendants."

The cases in the federal courts in which the rule has been applied have been as to one class upon cases begun in state courts and then removed from the state court to the federal court where it has been sought to procure personal judgments against parties who, by reason of extraterritorial residence, were completely beyond the jurisdiction of the state court. There the defendant has been allowed to appear and deny the power of the court to have any right to take jurisdiction at all

over him, and to reserve that question when decided against him, and notwithstanding that reservation to also contest the cause on its merits. The other class of cases have been cases in which, by the express terms of the act of Congress defining the jurisdiction of the federal court, it had no jurisdiction to entertain the cause except in the districts of the residence of the plaintiff or defendants. Coe v. Armour Fertilizer Works, 237 U. S. 413, 35 Sup. Ct. 625, 59 L. Ed. 1027.

The case at bar presents no such question. Here defendant is a domestic corporation with its residence and principal office within the court's territorial jurisdiction. Both the subject-matter of the cause and the persons of all the parties are within the court's power to act, and within its territorial jurisdiction. The question presented is not really one of competent jurisdiction in any sense as denying the court's power to take jurisdiction over either the cause or the parties. It is one of due service of process, i. e., of due process of law, of lack of due procedure to give the party cited his legal day in court. The defendant's contention is that it was not served with process as required by law so as to compel it to appear and have its day in court.

The object of the service of process is to bring the party into court, and, after due opportunity to him to defend, then to award judgment for or against him. If the receipt of that notice is admitted, and the party comes into court, and due time is given, and no snap or hasty judgment attempted, then it would appear that all the purposes of serving process have been accomplished.

The spectacle that would be here presented, if the contention of the appellant were sustained, would be that of a domestic corporation actually admitting receipt of the notice, and appearing in court, receiving its due time for preparation, filing its answer on the merits, proceeding to trial, cross-examining and examining at length its own and its adversary's witnesses, doing everything any other litigant could do in a court of justice, and then, after a solemn and final judgment rendered, upsetting and rendering naught all that has been done, simply because the notice delivered to it, and which it received, was delivered to its secretary and not to one of its directors, or its cashier, or president.

It seems to us that the rule with regard to nonresidents does not apply to residents in the position of the respondent below, and that its filing its answer to the merits, and appearing and contesting the cause on the merits, was a waiver of the alleged irregularity in the service of the monition.

We might add that, in the jurisdictions which permit such reservations of such preliminary questions, it is strictly required that the party protesting shall not solicit or ask or seek to procure any action of any kind on the merits until the decision of his protest. In the present case the respondent not only asked that the service be quashed so as to leave the cause still pending for another service, but sought to procure a dismissal of the libel and termination of the suit, which would have ended it for this suit so far as the merits were concerned, and not merely leave it open for another service of process.

The facts of the case appear to be that the deceased, Alonzo Skin-

ner, was a longshoreman or dock hand employed by the appellant about its docks at Berkley, on the southern side of the Elizabeth river, at Norfolk. His labor was to work trucking around the dock, and on barges, carrying trucks from the dock to the barges and back. On 22d August, 1913, a barge lying at the dock of appellant loaded with goods was about to be transferred across the Elizabeth river to the dock of the Old Dominion Steamship Company. The chief clerk of appellant on its dock called Skinner and directed him to go on the barge and carry the package of waybills across to the Old Dominion Steamship Company's dock. Skinner, in pursuance of instructions, went on the barge. He appears to have been the only person on the barge, as the barge had no crew. It was operated when towed by the crew of the appellant's tug, which did the towing. The barge was about 100 feet long and 30 feet wide and was then drawing not over 12 to 15 inches of water. It was a barge with a closed cabin or house built upon the deck of the barge. Between the sides of the house and the gunwale or side of the hull of the barge was a walkway or runway about 12 to 13 inches wide. For the support and protection of persons on this runway a line, called in the testimony the lifeline, was stretched along the side of the house two or three feet above the surface of the runway, and held to the side of the house by supports or fastenings at proper intervals; so that any one walking along the runway could hold this line to steady and support himself against falling off the barge. The appellant's tug Lynnhaven approached to tow over the barge about 5:10 p. m. The mate was off duty eating his supper. The captain was at the wheel of the tug, and the deck hand was handling the lines near the forward bitts of the tug. The captain called to Skinner, who was on the barge, apparently at one end of the barge, to put his hawser over a bolt on the corner of the barge, which Skinner did, and the tug then hauled the barge clear of the dock out into the stream, and the captain, wishing to make fast alongside the barge, slackened up on the hawser, and told Skinner to slip the hawser over the bolt and up to the bitt about amidships of the barge. This required Skinner to walk along the runway on the edge of the barge. He slipped the hawser over the bolt and attempted to carry it to the other bitt. The captain saw that, with the tug and barge drifting apart, Skinner was in danger of being pulled overboard, called to him to let the hawser go, and then backed the tug off the barge. He backed away some distance, and then went ahead again, in order to get up to the barge, which was drifting in the stream, so as to fasten his hawser to the barge. As he approached the barge, Skinner was standing on the runway of the barge. The tug struck the barge, shoving or swinging the barge away for several feet, and, from the force of the impact, causing Skinner to lose his balance, or his hold on the lifeline, and be precipitated over the side of the barge into the stream, when, after some ineffectual efforts on the part of the crew of the tug to rescue him, he was drowned. The libel charges that the drowning resulted from two acts of negligence on the part of the tug's crew, viz.: (1) That the tug in approaching the barge carelessly and negligently struck the barge with great and extraordinary force and vio-

lence, by reason of which the deceased was thrown overboard; (2) that no reasonable or proper efforts were made by the crew of the tug to save him, and had such efforts been made he would have been saved.

The learned judge who tried the case in the court below makes no specific findings as to the acts of negligence on which he bases his conclusion, but finds generally that "the deceased lost his life solely as the result of negligence of the defendant company and its servants and without fault on his part." There is another act of negligence claimed by the appellee as evidenced by the testimony, and which the appellee, in his argument, relies upon for affirmance of the decree below, viz.: That Skinner was an inexperienced person, who was directed by the captain of the tug to perform a piece of work he was entirely unfit and unqualified to perform, and lost his life in consequence; that the work he was required to perform was to walk along the narrow runway on the edge of the barge, and place a hawser over the bitt, that being a thing a green or inexperienced hand cannot perform with safety to himself.

The evidence does not seem to show that the blow struck by the tug on the barge when approaching for the purpose of making fast in the stream was of extraordinary or unusual violence. Neither the tug nor the barge appear to have been injured. The coming together of two such boats in midstream, both more or less in motion, is always accompanied by some jar or thump, and there is nothing in the testimony to show that the contact in this case was more violent than is usual in similar cases. There does seem to have been delay in the efforts to rescue Skinner due to the absence of the best facilities. The deck hand who endeavored to throw the line had a line apparently too heavy for him to fling far enough to reach Skinner where the latter was in the water, although a lighter line might have accomplished the purpose. There was no ring buoy or life preserver at hand at that juncture for the deck hand to fling to Skinner. The deck hand had to go up the side of the house of the tug to the deck above, near the pilothouse, and break open a box to get out a life preserver, and when he flung the life preserver the tug had drifted so far from Skinner the life preserver failed to reach him. From all the evidence it would appear that the drowning was the result of a chain of circumstances. Skinner was too inexperienced or too careless to handle himself on the runway of the barge, and the unexpected (to him) force of the jar and sheer caused by the tug striking the barge precipitated him overboard. He seems to have been unable to swim, and the lack of having at hand the proper facilities on the tug to rescue him caused a delay which made the efforts at rescue futile.

[4, 5] Assuming that Skinner's ignorance and inexperience with the act of the captain in putting him in a dangerous position were not in issue as not having been alleged in the libel, then the decree of the court below, construed as being responsive to the libel, found as a conclusion of fact that the respondent was guilty of negligence in one or both of the particulars charged in the libel. It seems to this court that if an employer requires its employés to work in a place where they may be subjected to the danger and peril of being precipitated

into the water, as in the present case, there should be provided devices and facilities reasonably fit and accessible to ward off a fatal eventuation by effecting a rescue if reasonably possible. It seems also that under the rather informal proceedings in admiralty, that unless the defendant pleads surprise, and procures a continuance for preparation, it is not improper for a court of admiralty, in its discretion, to allow testimony as to concurring circumstances, indicating negligence, and to base a decree thereon, although not particularly or specifically pleaded in the libel, especially when the circumstances are such as in the present case, the dangerous character of the work required to be done on the runway by Skinner if performed by an inexperienced man.

There seems to have been no one but Skinner on the barge. In obeying the captain's orders to make fast the tug to the barge, he was obeying the orders of one who he had a right to assume was, under the circumstances of this case, a superior employé of the common employer whose orders he was required to obey.

[6] The general rule is that the decision of the judge below in an admiralty cause on questions of fact, where there is conflicting testimony, or the credibility of witnesses is involved, and the witnesses have been examined before the judge below, will not be reversed unless manifestly contrary to the evidence. In the present case we do not find that the conclusions of the learned judge who tried the cause below and heard the testimony can be said to be manifestly against the evidence upon the questions of fact involved, but, on the contrary, that as a whole there is sufficient evidence to support them, and the decree below is accordingly affirmed.

Affirmed.