## YOUNG v. NEW ORLEANS COAL & BISSO TOWBOAT CO.

(District Court, E. D. Louisiana. October 23, 1925.)

### No. 17934.

Master and servant ⬡═▷278(I)—Negligence of owners of collier barge resulting in death of employee held not established.

In action for death of coal wheeler, who while squatting over edge of collier barge, answering call of nature, fell into water and was drowned, evidence *held* insufficient to establish negligence of barge owners in failing to provide reasonably safe place to work, or in working decedent excessively long hours, inducing fatigue and physical strain, lessening his ability to help himself or secure succor after falling.

In Admiralty. Libel by Josephine Young against the New Orleans Coal & Bisso Towboat Company. Libel dismissed.

John J. Wingrave, of New Orleans, La., for libelant.

P. M. Milner, of New Orleans, La., for respondent.

BURNS, District Judge. Libelant, Josephine Young, claims damages of the respondent, New Orleans Coal & Bisso Towboat Company, for the death of her son, Ernest Young, who was drowned while in the employ of respondent as a coal wheeler by falling from on board respondent's collier barge Uncle Bill and drowning in the Mississippi river, at or about 5 o'clock a. m., or "daybreak," on December 17, 1924. The material charges of the libel are that:

(1) "The long hours he was forced to work necessitating fatigue, and in the early hours of the morning, because of the fatigue and physical strain he was undergoing, he' was in no condition to help himself or secure succor when he met his death by falling into the Mississippi river and losing his life by drowning."

(2) "That the contributing cause of her son's death was the long hours he was forced to work and the improper precaution taken by defendant and her son's employers to protect her son in the discharge of his employment and to make the place he was working on safe."

(3) "That the death of her son was due to the negligence of defendant having worked her decedent son to a point beyond endurance, and which was the proximate contributing cause of her son's death."

Respondent in effect pleaded a general denial and averred that the collier Uncle Bill was and had been coaling a ship, on which the deceased worked trimming the coal in the bunkers; that he had, with others, knocked off at or about 5 a. m., left the ship, and gone on board the collier where—

(1) "He was negligently and carelessly engaged in a sitting posture in answering a call of nature, when respondent is informed and believes that the said Ernest Young fell asleep, fell overboard, and was drowned."

(2) "That the said Ernest Young was in good health and strong, and came to his death by his own recklessness, gross carelessness, and negligence, and respondent was guilty of no negligence, or lack of care, or neglect, and had absolutely nothing to do with the death of Ernest Young."

The libel is not sustained by the evidence. In no material particular is there any evi-

dence of negligence on the part of respondent. The evidence by a clear preponderance shows that the decedent and many of his colleagues had been employed by respondents for long periods of time, some of them for ten or more years, the decedent himself for some 3 or more years; that the hours of duty were determined entirely by the number of vessels in port, which made the employment of the trimmers irregular and their earnings precarious; that they were paid extra for overtime and night duty; that the hours of service were largely determined by the men themselves, who were paid daily at hourly rates. Even were this not so, the fact that decedent had been on a long tour of duty for some 20 hours could at best be construed as probably a remote, but not the proximate, cause of the accident, if a causal connection could be traced in the evidence to sustain the charge in the libel.

The second contention of libelant is to the effect that the negligence consisted in respondent's failure to make "the place he [the deceased] was working on safe." This vague statement is the more difficult to understand, in the light of the evidence, which conclusively shows that all of decedent's work was on board the vessel being coaled, and not on defendant's collier barge at all; this barge being decked over all flush with the sides, equipped with housing for tools and machinery, and a room used by the coal wheelers or trimmers as a lavatory and dressing room, before going to and on returning from duty trimming bunkers aboard the ship receiving coals.

The evidence having disclosed that decedent had squatted over the collier's side, and had fallen thence to the water, unaccountably so far as the evidence shows, libelant's proctor assumes in argument to contend that the absence of a toilet stool on the collier barge brings the case within the rule that a master is bound to furnish a servant with a safe place to work, citing various decisions wherein this general rule is applied. This contention is not sustained by either the pleadings or the evidence here. Marine equipment designed for such special port service as colliers, tipplers, and other such craft, are not to be confused with ferries and vessels engaged in passenger and other public service, regulated by the shipping and navigation laws. Moreover, the testimony of one of the witnesses was that a heaving line was at hand aboard the collier barge, and he was ready to use it, and "was aiming to try to catch him, but could not see him." This was a device "reasonably fit and accessible to effect a rescue," within the rule prescribed in Norfolk Sou. R. Co. v. Foreman, 244 F. 353, 156 C. C. A. 639, if it were necessary to consider its application here.

There will be a decree in favor of defendant, dismissing libelant's suit, at her cost.