# THE AGUIA.
## No. 1025.

District Court, E. D. South Carolina.
June 26, 1947.

Charles W. Waring, of Charleston, S. C., for libellant.

George L. Buist, of Charleston, S. C. for respondents.

WYCHE, District Judge.

This libel is brought by Sandoval Magno Feio, the former master of SS Aguia, now of Brazilian Registry, for wages up to February 25, 1947, on which day he was discharged from command of his ship; for wages from February 25, 1947, until he shall return to Brazil, for subsistence at Four Dollars ($4) per day for the same period, and for transportation back to Brazil.

The ship has been arrested under process issued herein. The respondent Cavalcante, master of the ship, has been served. The respondent Dantas, owner of the ship, has not been served. Cavalcante entered a general appearance by filing an answer denying the material allegations of the libel. Dantas entered a general appearance in

dividually and as claimant of the ship by filing an answer denying the material allegations of the libel, and a cross-libel for an accounting, claiming that the libellant was indebted to him on account of the matters alleged therein. Libellant denies the material allegations of the cross-libel.

The libellant presented himself and testified as a witness at the trial and then announced that he had no other witnesses and closed his case. The claimants of the ship thereupon challenged the jurisdiction of this court as to the in rem proceeding, basing the motion on libellant's testimony that he actually was in command of the ship up to February 25, 1947, and on the theory that therefore there is no maritime lien to support the action.

It appears that the arrangement between the libellant and the owner Dantas for the former to take command of this ship, was made in New York while they were both there, and was, therefore, a contract made on American soil. The ship at that time and through February 25, 1947, was an American ship, and she was not changed to the Brazilian flag until sometime in March of this year. Therefore, the contract was made with respect to an American ship.

■ The law is settled that in this country there is no maritime lien in favor of a master for wages, and I have been cited to no law that gives such a lien for the other wage perquisites claimed by the libellant. Steamboat Orleans v. Phoebus, 11 Pet. 175, 9 L.Ed. 677; The Graf Klot Trautvetter, D.C., 8 F. 833; Alabama Dry Dock & Shipbuilding Co. v. Foster, 5 Cir., 31 F.2d 394; Burdine v. Walden, 5 Cir., 91 F.2d 321; The Herbert L. Rawding, D.C., 55 F. Supp. 156; Benedict on Admiralty (6th Ed.) § 80.

■ In the case of Norton, Assignee, v. Switzer, 93 U.S. 355, 23 L.Ed. 903, the Supreme Court said: "Seamen have a maritime lien for their wages wherever the services may be rendered; but that just rule was never extended to the master, except in cases where the lien is created by statute." No federal statute has been cited to me creating a lien for the master of the vessel for his wages. Section 8781, Code of Laws of South Carolina 1942, creating liens on ships and vessels for labor performed and materials furnished, in my opinion, gives no lien to a master of a vessel for his wages.

As there is no maritime lien, there is no right in rem, and this Court has no jurisdiction to enforce the claims of the libellant against the ship.

After the motion to dismiss the in rem proceeding had been made, the respondent Cavalcante moved to dismiss the libel as to him on the ground that no contractual obligation on his part to the libellant had been proved in the latter's testimony. Under the libellant's testimony no such contract exists.

■ During the taking of the testimony in behalf of the respondents the libellant moved to amend his libel by eliminating therefrom allegations that the libellant was master of the ship and by asserting the contrary. Under Admiralty Rule 23, 28 U.S.C.A. following section 723, the court has the discretionary right to grant the motion. The motion was granted, and thereupon the libel stood amended by elimination of all statements therein that the libellant was master of the ship, and by inserting an allegation therein that he was not the master.

■ However, the change in the allegations of the libel does not change the facts as established by the testimony. The preponderance of the testimony shows that the libellant was in supreme command of the ship and of the crew; that he bought supplies for the ship; that he gave orders to the crew; that he demoted and again promoted the chief engineer. Whatever he might term himself in the libel, he was in fact the representative of the owner in charge of the ship and the crew, and in his own testimony he correctly terms himself the master. Therefore, the amendment of the libel does not change my conclusion that the libellant has failed to establish any maritime lien arising out of his services to the ship.

■ Respondent Dantas moved that the libel be dismissed as to him upon the ground that he has never been served. The respondent Dantas individually, in filing an answer denying the material allegations of the libel, has subjected himself personally

to the jurisdiction of this court. The filing of an answer, which goes to the merits of the libel, amounts to a general appearance. "The rule in this court is that, wherever a party desires to make jurisdictional question, he has the right to appear for the special purpose only of raising that objection, and, if the objection is overruled, he may then appear generally and contest the case upon the merits, without waiving the objection; but, if he appears generally without doing so, the objection is waived." Philadelphia Life Ins. Co. v. Burgess, D.C., 18 F.2d 599, 602.

As to the libellant's claim against Dantas in personam for wages, travel expenses and subsistence, the pleadings and the testimony disclose that the respondent Dantas employed the libellant Feio in Brazil for a service that contemplated having Feio go to New York and there ship as mate of a vessel named the Lucy; that Dantas was contemplating purchasing and making a voyage on the Lucy to Brazil, under the command of an American captain, who was to be chosen. Dantas and Feio thereupon went to New York, and, after arrival there, Dantas determined not to purchase the Lucy. In place of the Lucy, he determined to purchase the American ship subsequently given the name Aguia, then lying at Charleston, and it was thereupon agreed between Dantas and Feio, while in New York, that Feio should come to Charleston and assume command of the Aguia and a crew of Brazilians, and carry out certain conversion repairs to the ship. Feio came to Charleston on or about October 6, 1946, and certain of the crew of Brazilians arrived on or about the same time, and repairs on the Aguia were commenced.

The ship Aguia was under the American flag when she was purchased by Dantas and remained under that flag until sometime in March, 1947, when Dantas and Captain Cavalcante went to Norfolk and arranged with the Brazilian Consul there for transfer of the ship to the Brazilian flag. This occurred after Feio's connection with the ship had been terminated.

At the time of the making of the contract between Dantas and Feio to serve on board the Aguia, the latter was an American ship, and she remained under the American flag until sometime after February 25, 1947. The contract of service was made in New York for services by Feio on a ship then under the American flag, and contemplated that Feio was to be in command of the ship and the crew that was to be put aboard her. The contracts, both the one originally made in Brazil, and the one made in New York, provided for a wage of Four Hundred, Twenty Five Dollars ($425) a month in American currency, or Fourteen and 17/100 Dollars ($14.17) per day.

On, or shortly before February 25, 1947, the respondent Dantas came to Charleston and brought with him the respondent Captain Cavalcante, to assume command of the vessel on the contemplated voyage from Charleston to Brazil. On February 25th a discussion occurred on the deck of the vessel between Dantas and Feio in which Dantas offered to allow Feio to remain on board as mate. At the conclusion of this discussion, Feio walked off the ship, and refused to continue in her service. The discussion involved both the question of the handling of money by Feio and the question of command, but the reason for Feio's leaving the ship was dissatisfaction with the action of Dantas in putting Cavalcante in command over him. Dantas on February 25, 1947, put Cavalcante in command over Feio for the contemplated voyage to Brazil, and Feio left the service of the ship because he was dissatisfied with this action on the part of the owner.

When, on February 25, 1947, Dantas proposed to put Cavalcante in command of the ship, and to allow Feio to remain aboard as mate, there was no proposal by Dantas that the wages of Feio should be reduced.

During the course of the discussion on the deck of the Aguia on February 25th, Dantas made an offer to Feio to allow the latter to return to Brazil on the Aguia, in either the capacity of mate or in the capacity of passenger. At the hearing before me, Captain Cavalcante, in open court, made an offer to Feio to allow him to return to Brazil on the Aguia in the capacity of a passenger (a new officer having been signed on as mate in the meantime) and Feio declined the offer.

The contract for the service of Feio on the Aguia is not entirely clear, nor is it material under my view of the case, as to whether an obligation was assumed by Dantas to allow Feio to command the Aguia on the voyage to Brazil, rather than to sail in the capacity of mate, as was contemplated on the voyage of the Lucy. If the contract made in New York did include a provision that Feio should command the Aguia on the voyage to Brazil, the action of Dantas in putting Cavalcante in command on February 25th was a breach of such provisions of the contract; there, under such circumstances, arose a duty on the part of Feio to minimize his damages by continuing to serve on the ship as mate at the same salary and to claim only for such damage, if any, as might have resulted to him from sailing as mate rather than as master. He was not privileged to withdraw from the service of the ship because of his injured dignity, and to refuse to render further service, and at the same time to be paid wages for services not rendered. The failure of Feio to remain in the service of the ship required the employment of another person as mate. It therefore follows that when Feio walked off the ship and refused to continue to serve as mate his employment terminated, and he was entitled to no further wages beyond that date.

Even if Feio had been wrongfully discharged from the service of the ship, and even if the owner had refused to allow him to continue on board in any capacity, there is no theory of the law under which Feio could have sat in idleness for an indefinite time and required the continuance of wage payments. It is elementary in the law of Master and Servant that when the servant is wrongfully discharged, he must bestir himself to seek other employment, or otherwise minimize his damages. Therefore, if Feio had been driven off the ship, and not merely reduced in position of command, it would have been his duty either to sign as a mariner in some capacity on some other ship at Charleston, or to return to Brazil and there seek other employment. There is no testimony, either that employment was unavailable on some other ship sailing from the Port of Charleston, or that Feio was so destitute that he could not either personally, or with the help of the Brazilian Consul, get passage back to Brazil. The theory that he has presented to the court that he was entitled to remain in Charleston, doing nothing, and be paid wages and subsistence by the owner of the ship is unsupported by any sound principle of law.

There is nothing in the testimony that justifies Feio in demanding transportation to Brazil by some more luxuriant mode of travel than afforded by the Aguia. He was twice offered transportation on the Aguia, once by Dantas on February 25th, and once by Cavalcante in open court on April 16th. Both offers were refused. There was no duty on the respondents to repeat the offer at any later date.

Inasmuch as Feio did not remain in the service of the ship beyond February 25th, and as he was not entitled to wages, and not entitled to transportation, it follows that he was not entitled to subsistence beyond the date last mentioned.

The cross-libellant Dantas has failed to establish any of the allegations of his cross-libel with respect to any improper handling of funds by the cross-respondent Feio. The cross-libel therefore should be dismissed and the judgment of this court should be that the libellant has fully accounted to the respondent Dantas for all monies entrusted to him, and is fully exonerated and acquitted from any and all further claims or demands by the respondent Dantas against the libellant in connection with any of the funds entrusted to the libellant or with respect to any of the actings and doings of the libellant during the time of his command of the SS Aguia.

An order has been entered dismissing the libel in rem and directing the marshal to release the ship from arrest.

An order dismissing the libel as to the respondent Cavalcante has been entered.

As to the remaining issue, judgment in personam should be given in favor of the libellant Feio against the respondent Dantas in the amount of Five Hundred, Thirteen and 06/100 Dollars ($513.06), together with

court costs applicable to the action in personam.

A decree carrying these conclusions into effect may be presented.