Frank SAVAS, individually and T/A World Wide Engineering Company, Libellant,

v.

THE SS CAPT. JOHN C., her boilers, engines, tackle, apparel and furniture, in rem, and Maria Trading Corporation and Associated Bulk Cargo, S. A., in personam, Respondents.

No. 7783.

United States District Court
E. D. Virginia,
Norfolk Division.
April 6, 1960.

642

---

Seawell, McCoy, Winston & Dalton,
Carter B. S. Furr, Norfolk, Va., for
libellant.

Baird, Crenshaw & Lanning, Francis
N. Crenshaw, Norfolk, Va., for Maria
Trading Corp.

Vandeventer, Black & Meredith, Hugh
S. Meredith, Norfolk, Va., for Associated
Bulk Cargo.

HOFFMAN, District Judge.

On August 10, 1956, at 2:47 p. m.,
libellant filed an *in rem* libel against the
steamship Capt. John C., formerly the
Steamship Maro. A monition was issued
but the Marshal was unable to attach the
vessel that afternoon at anchorage due
to a sudden storm. The vessel was ac-
tually arrested at 7:30 a. m. on Saturday,
August 11, while at anchorage. The
master of the vessel filed a claim for
same on Monday, August 13, in behalf
of the owners, Associated Bulk Cargo,
S. A., Panama. On the same day the
Court conducted a bond hearing and or-
dered the vessel released upon the post-
ing of security in the sum of $41,000.
It should be noted, however, that a proc-
tor appearing in behalf of George J.
Stathos and William F. Murphy, Jr., di-
rected the Court's attention to that por-
tion of the original libel claiming $25,000
which, according to this proctor, was
clearly not a maritime lien. Acting upon
the statement of proctor for libellant that

this $25,000 was paid by libellant specifically for use in connection with the operation and maintenance of the vessel, the Court included this amount in the overall security required, namely, $41,000, but provided that if libellant failed to produce reasonably accurate proof of the use of this $25,000 in the operation and maintenance of the vessel, the excess cost of posting a bond over $15,000 would be assessed against libellant irrespective of the final outcome of the case.

On March 20, 1958, the Court entered an order dismissing without prejudice so much of the libel as refers to the claim for $25,000 for the reason that said portion of the claim was the subject of litigation in another forum, but reserving for further determination the matter involving the assessment against libellant of the costs and interest thereon incurred by respondents in posting said bond. At the same time, the Court reduced the bond from $41,000 to $16,250; the latter figure being agreed upon by proctors.

■ It is clear from libellant's own testimony that the $25,000 was a personal loan to one George Stathos. It was not even remotely connected with the arrested vessel, and in no sense can be claimed as a maritime lien. Accordingly, libellant will be charged and taxed with the cost of a bond in the sum of $25,000 from August 13, 1956, to March 20, 1958, or, in lieu thereof, interest on said $25,000.[1] Parties asserting a maritime lien upon a vessel must proceed with caution when their attention, at a bond hearing, is directed to the fact that a portion or all of the claim plainly does not justify a lien.

■ Turning to the merits of libellant's claim we find that libellant, a marine surveyor by trade, contends that the vessel is subject to liens occasioned by three separate transactions as follows: (1) a claim for labor performed, materials furnished, and services rendered to the vessel at Norfolk, Virginia, from August 24, 1955, to September 1, 1955, evidenced by an invoice dated October 25, 1955, in the sum of $1785; (2) a claim for labor performed, materials furnished, and services rendered to the vessel at Baltimore, Maryland, from October 16, 1955, to October 21, 1955, evidenced by an invoice dated March 5, 1956, in the sum of $2560; (3) a claim for fees, miscellaneous advances, telephone and cable, entertainment, subsistence, etc., *allegedly* incurred for the general benefit of the vessel at Bremen, Germany, for the period from November 17, 1955, to February 29, 1956, evidenced by an invoice dated April 5, 1956, indicating a balance due in the sum of $10,182.22.

■ We have no difficulty in holding that the Norfolk and Baltimore claims are valid maritime liens and should be allowed as such. Interest at the rate of six per cent per annum will be allowed on the Norfolk invoice from November 25, 1955, and on the Baltimore invoice from April 5, 1956; the Court allowing a period of 30 days for the payment of each invoice. There is some contention that on March 12, 1956, a check in the sum of $2,000 was delivered to libellant in full settlement of the Norfolk and Baltimore claims aggregating $4,345, but no release was taken and no notation appears on the check reflecting that it is related to either the Norfolk or Baltimore invoices. Bearing in mind that libellant had been in Germany at the instance of Murphy and Stathos until February 29, and that libellant had been complaining that he was without funds in this foreign country, the conclusion is obvious that the payment of $2,000 was to apply against the German expenses of libellant, and the Court is of the opinion that Murphy's statement to the effect that the $2,000 was given in settlement of the Norfolk and Baltimore

1. Technically libellant should be charged for the cost of a bond in the sum of $26,000 from August 13, 1956, to March 20, 1958, and thereafter for the cost of a like bond in the sum of $1250, but proctors apparently agreed that a bond in the sum of $16,250 would be appropriate security for the matters alleged in the libel after excluding the claim of $25,000.

644

claims is false. As to the Norfolk and Baltimore work, the services of libellant went beyond that of a marine surveyor. He actually did repair work, furnished materials, and supplied labor for the vessel. As it was performed upon the order of the owner of the vessel, or other person (Stathos) authorized by the owner, the lien is clearly established under 46 U.S.C.A. §§ 971, 972. From the evidence it is plain that libellant's work completed in these ports on the Eastern Seaboard had very little, if any, connection with the inter-party dealings hereinafter discussed.

To appropriately consider libellant's claim for $10,182.22, it is necessary to review the pleadings and give a background of the negotiations relating to the Maro, now the Capt. John C. A related case involving a dispute between Stathos and Murphy was before this Court in September, 1955. See Stathos v. The Maro, D.C.E.D.Va., 134 F.Supp. 330. The Maro, ex Merope, was sold to Maria Trading Corporation in February, 1955; the purchase was negotiated by Stathos with Murphy making the necessary financial arrangements. Certain agreements were entered into between Stathos and Maria Trading whose stock was held by Murphy. Later, on May 27, 1955, Murphy and Stathos entered into an agreement wherein Murphy agreed to sell, and Stathos agreed to buy, the entire stock authorized and outstanding for $340,000, with the stock to be delivered to an escrow agent pending completion of payments to be made by Stathos as follows: (1) $10,000 upon the execution of the agreement which was paid; (2) $25,000 on or before June 3, 1955; (3) $15,000 on or before June 30, 1955; and (4) the balance to be paid from the ship's profits. Pending payment of the purchase price, Stathos was given the authority, in behalf of Maria Trading, to sell the vessel provided the net proceeds of sale exceeded the indebtedness of Stathos. Appropriate provisions were made by the agreement in the event of default on the part of Stathos.

On or about June 1, 1955, the libellant, Savas, became involved in these financial arrangements. Stathos apparently did not have the $25,000 required to meet the payment due on June 3, 1955. Libellant gave him a check for same which, in turn, was endorsed by Stathos and delivered to Murphy. On or about June 6, 1955, an agreement was prepared, but presumably not executed for many months thereafter[2], between Stathos, the libellant (Savas) and one Kirkilies. The parties acknowledged their familiarity with the underlying agreement between Stathos and Murphy. The purport of this agreement was that Stathos would sell 35% of his stock in Maria Trading to be acquired from Murphy, with 25% going to Savas for a consideration of $25,000, and 10% going to Kirkilies for a consideration of $10,000. The agreement acknowledges receipt of the payment of the money by libellant (Savas) and Kirkilies. It is further provided that Stathos would obtain the consent of Savas and Kirkilies in the event of the vessel's sale.

Savas, Stathos and Kirkilies apparently brought some action in New York against Murphy, Maria Trading, and others. Stathos had also instituted his *in rem* action against the Maro in this Court, where exceptions were sustained on the ground that admiralty had no jurisdiction to decree specific performance of the agreement between Stathos and Murphy. On November 18, 1955, which was one day after Savas was sent to Germany by Murphy and Stathos, an amended agreement was executed by the

2. The agreement bears no date, but the photo copy reflects that the numeral "6" was thereafter inserted for the date with the month still left blank. Libellant testified that the agreement was not signed for many months. In the interim, litigation between the parties was in process and, on November 18, 1955, Murphy and Stathos entered into an amended agreement. On February 23, 1956, at Bremen, Germany, Stathos and libellant executed a so-called stockholders agreement which referred to the agreement dated June 6, 1955, between Stathos, Kirkilies and Savas.

last two named individuals. Obviously, for the moment, peace had been restored.

The Maro had incurred rather severe storm damage on a trip to Germany following completion of the work in Baltimore. The vessel could not leave Bremen without a certificate of seaworthiness. The Gallie Corporation, occupying the same offices as Maria Trading and designated as the operators of the Maro, furnished libellant a letter dated November 17, 1955, which designated Savas as port engineer for The Gallie Corporation and stated that he was supervising repairs on the Maro then berthed in Bremen, Germany. For the purpose of these proceedings, Murphy, Stathos, Maria Trading Corporation and The Gallie Corporation are one and the same. Savas was designated as the individual "in charge of repairs or authorizing disbursements". While Murphy now contends that certain repairs directed by Savas were unauthorized, there is no merit to this position as the evidence does not substantiate the same even if we were to consider this point by way of set-off or counterclaim. Furthermore, when the vessel was sold on July 17, 1956, by Maria Trading to Associated Bulk Cargo, S. A., the vendor reaped the benefit of such repairs; there being no contention that the repairs were not "necessary" as distinguished from "authorized".

What is apparent from the evidence is that the libellant, Savas, at the time of his stay in Germany, was clearly acting as the owner's representative and not simply in the capacity of a marine surveyor. At all times he had an eye to the future when he presumably would participate in the operation or sale of the vessel, along with Stathos and Kirkilies. Indeed, he endeavors to charge as a lien against the vessel a claim for expenses to Panama in connection with the formation of a corporation known as Sociedad Maritima Victoria, S. A., in which corporation Stathos, Savas, and Kirkilies were to be the sole stockholders. The mere fact that Stathos may have thereafter deprived him of his rights is of no concern in this litigation; nor is it of any consequence that Savas was not advised of the sale of the vessel on July 17, 1956, other than to consider whether libellant's claims on the Norfolk and Baltimore jobs are barred by laches, which the Court holds does not constitute a defense to libellant's claims heretofore approved as liens.

■■ At all times while in Germany, Savas was essentially serving as a general agent for the owner and operator of the vessel. As such, he has no maritime lien. The Maret, 3 Cir., 145 F.2d 431, 443, and authorities therein cited. Libellant's claim of $10,182.22 is disallowed as a maritime lien, without prejudice to his rights to an *in personam* judgment or decree against the party or parties who may be obligated to him.

We advert to the pleadings. The libel as originally filed was against the vessel *in rem*. After a claim was filed, in due time the vessel's new owner, Associated Bulk Cargo, S. A., filed its answer and cross-libel, the latter alleging damages resulting from a wrongful attachment. As the Court has held that the attachment was not wrongful, the cross-libel of Associated Bulk Cargo against Savas is dismissed, reference being made, however, to the taxation of the costs of a portion of the bond premium by the inclusion of the claim for $25,000 which was obviously not a maritime lien. There is no showing of any other damage flowing from the requirement to post security in the sum of $41,000, as contrasted with $15,000. One year following the commencement of the original action, Associated Bulk Cargo filed an impleading petition against Maria Trading Corporation requesting a judgment over for such sum determined to be due to libellant under any maritime lien, plus detention damages suffered by reason of the attachment of the vessel. No exceptions or answer were filed by Maria Trading to the impleading petition as distinguished from the libel and cross-libel hereinafter mentioned. On the same date, August 16, 1957, Associated Bulk Cargo filed a cross-libel against Maria Trading claiming detention damages, legal expens-

es, and other expenses incurred by Associated Bulk Cargo by reason of a breach of warranty on the part of Maria Trading in its bill of sale which passed title free and clear of all liens. Maria Trading forthwith filed exceptions to the libel of Savas and, in a separate pleading, exceptions to the cross-libel of Associated Bulk Cargo. Maria Trading thereafter answered the libel filed by Savas denying the admiralty and maritime jurisdiction, and also answered the cross-libel filed by Associated Bulk Cargo reserving exceptions previously filed and contending that the rules do not permit an impleaded respondent in an *in rem* action to be subjected to a cross-libel *in personam*. Thereupon, libellant sought to file an amended libel seeking damages *in personam* against Maria Trading Corporation and Associated Bulk Cargo, S. A. The order permitting the filing of the amended libel was made subject to exceptions to be filed and both respondents thereafter filed same.

■ The exceptions of Associated Bulk Cargo to the amended libel are sustained as to any *in personam* claim against Associated Bulk Cargo. No cause of action *in personam* is stated as to this respondent.

The crucial question is whether Maria Trading may now be held liable to Savas and to Associated Bulk Cargo in an *in personam* claim. It will be observed that Maria Trading never noted any special appearance, or otherwise excepted or objected to the jurisdiction of the court, as to the claim of Associated Bulk Cargo arising out of the *in personam* process issued under Admiralty Rule 56, 28 U.S. C.A., pursuant to the impleading petition filed by Associated Bulk Cargo. At least until Maria Trading filed its answer and exceptions to the amended libel filed by Savas, it seems clear that Maria Trading considered itself as an impleaded respondent and so denominated itself in all the pleadings. When Maria Trading filed its exceptions to the amended libel, it stated, for the first time, that it was in court only "to deny the jurisdiction of this court over *this controversy*." A

reasonable interpretation of this language is that Maria Trading was merely reasserting its prior position taken in its answer and exceptions to the original libel to the effect that there was no maritime lien asserted upon which libellant could predicate any *in rem* claim against the vessel. Indeed, in argument, Maria Trading conceded that it always considered itself an impleaded respondent under Rule 56.

It seems clear that Maria Trading was before the court *in personam* prior to the filing of the amended libel by Savas. This is so because of its participation as an impleaded respondent under Rule 56, without reservation of rights under this process. For this reason it is essentially immaterial that Maria Trading asserted it was not before the court in excepting to the amended libel. Efentakis v. The World Legion, D.C., 165 F.Supp. 773; Nolan v. Jensen, D.C., 171 F.Supp. 351, affirmed 4 Cir., 272 F.2d 630. Even if not compelled to answer the amended libel, under the application of Rule 56 it is apparent that a decree may be entered in favor of libellant directly against Maria Trading as a respondent-impleaded. Rule 56 provides that *after service* on such party impleaded is duly made, such party is in the case as though named in the original libel. Tice Towing Line v. James McWilliams Blue Line, 2 Cir., 57 F.2d 183; Cavanaugh v. The Lenco II, D.C., 102 F.Supp. 213. While the service upon proctor for Maria Trading, standing alone, is no service at all and, at that time, Maria Trading was not required to make any appearance, yet Maria Trading voluntarily appeared and filed certain pleadings. It made no response to the impleading petition and took no exception to the Court's permitting same to be filed. It did file proper exceptions objecting to service on its proctor as to the cross libel filed by Associated Bulk Cargo, and further reserved its right to object to personal jurisdiction in its answer to the cross-libel. At the same time Maria Trading filed exceptions and an answer to libellant's original libel; the latter being required

by Rule 56 assuming that the impleaded respondent is before the court. Neither the exceptions nor answer reserved any question as to whether Maria Trading was before the court *in personam,* and these pleadings merely put in issue the Court's jurisdiction over the subject matter by contending that none of libellant's three claims constituted maritime liens. The answer filed by Maria Trading to the original libel admitted that libellant was employed and sent to Germany by the former operators of the vessel, but asserted as an affirmative defense that libellant breached his contract and was discharged as a result thereof.

These facts, in the absence of a special appearance, constituted a general appearance consenting to jurisdiction *in personam* as to libellant's claim. Norfolk Southern R. Co. v. Foreman, 4 Cir., 244 F. 353, 358; The Aguia (Feio v. S. S. Aguia), D.C., 72 F.Supp. 201, 1947 A.M.C. 1386; Phillips v. The Hellenic, D.C., 179 F.Supp. 5, 1959 A.M.C. 1903, amended 1960 A.M.C. 110; Benedict on Admiralty, 6th Ed., Vol. 2, pp. 56–57.

■ Technically, the original respondent, Associated Bulk Cargo, is without authority to file a cross-libel against Maria Trading under Rule 50, although Maria Trading as a party impleaded under Rule 56 was at liberty to file a cross-libel against Associated Bulk Cargo. The affirmative relief sought by the original respondent is set forth in the impleading petition. With one exception, the cross-libel and impleading petition seek the same relief. Both pleadings request the entry of a judgment over and detention damages occasioned by the arrest of the vessel. Only the cross-libel demands legal expenses. While a party impleaded may not be required to litigate matters independent of the original controversy, it is clear that detention damages and legal expenses incident to such proceedings arise out of the cause of action for which the third party was impleaded. We need not, therefore, consider the cross-libel as such items are properly before the Court by the impleading petition.

■ It is argued that since the original libel was *in rem,* and the impleading petition under Rule 56 was *in personam,* the libellant cannot recover directly against the respondent impleaded *in personam.* The authorities are to the contrary where the original libel shows the basis of liability. The G.L. 40, 2 Cir., 66 F.2d 764, 766–767; Mangone v. Moore-McCormack Lines, Inc., D.C., 152 F.Supp. 848; The City of Lincoln, D.C., 25 F. 835; Joice v. Canal-Boats Nos. 1,758 and 1,892, D.C., 32 F. 553; The Seaboard No. 59, D.C., 61 F.Supp. 462.

A decree will be entered with respect to the maritime liens sustained herein, with an appropriate reference to a Commissioner for determination of the libellant's claim against Maria Trading for fees, miscellaneous advances, and other items incurred in connection with his visit to Bremen, Germany. The Commissioner shall likewise consider the claim of Associated Bulk Cargo for detention damages, reserving to the Court the matter of determination of legal expense. The Commissioner shall disregard all items of expense incurred by libellant relative to the formation of the corporation in which Stathos, Savas, and Kirkilies were to be the sole stockholders, but the rights, if any, of libellant as to any claim against Stathos and/or Kirkilies are reserved for determination in a proper forum.

This memorandum is adopted by the Court as its findings of fact and conclusions of law, pursuant to Admiralty Rule 46½.